GAY v. BERKEY.

1. TENANCY IN COMMON—SERVICES OF CO-TENANT—COMPENSATION.
   In the absence of an agreement, one tenant in common in lands cannot recover of his co-tenant for services rendered in connection therewith.

2. ACCOUNTING—INTEREST—AGREEMENT—MUTUAL ACCOUNTS.
   In a suit for an accounting brought by heirs against one who had had business dealings with deceased, but not as a partner, resulting in a mutual account, evidence examined, and in connection with the prayer of defendant's answer and cross-bill, "that the court shall make and state the account between the parties hereto, and that it compute the interest thereon at the legal rate, but without annual rests," held sufficient to show an agreement to pay interest on the mutual account at the rate provided by law, in the absence of stipulation for a different rate.

3. INTEREST—COMPOUND INTEREST—AGREEMENT.
   An agreement, made before interest becomes due, to compound it, is void.

4. SAME—AGREEMENT AFTER INTEREST DUE.
   An agreement to pay interest on interest, made after the interest becomes due, is valid; the forbearance to enforce payment and extension of time being a sufficient consideration.

5. SAME—COMPUTATION—EVIDENCE.
   The fact that two persons, in their dealings with a corporation in which each was interested, assented to settlements, with annual rests and compound interest, is insufficient to show that in their dealings with each other they made an agreement to pay it, or that they settled on that basis as to mutual accounts of their business dealings.

6. ACCOUNTING—INTEREST—COMPUTATION—APPLICATION OF CONNECTICUT RULE.
   In a suit for an accounting by heirs against one who had had business dealings with deceased, but not as a partner, resulting in a mutual account, where defendant admitted that he paid a certain sum on the account, and made other payments fully satisfying the account, and that certain taxes paid by him were paid on the agreement, as stated in the bill of complaint, that one-half of the amount so paid should be

credited by deceased to defendant in the mutual accounts between them, he is in no position to claim the application of the Connecticut rule in the computation of interest—that is, simple interest on the items of each side of the account from the date of the items—the sole basis for making such claim being that the items of credits to defendant were not payments, but independent items.

Cross-appeals from Kent; Wolcott, J. Submitted June 15, 1904. (Docket No. 24.) Decided October 4, 1904.

Bill by William H. Gay, individually, and as administrator of the estate of George W. Gay, deceased, and Gertrude A. Carman against Julius Berkey for an accounting. From the decree rendered, all parties appeal. Modified and affirmed.

*Butterfield & Keeney*, for complainants.

*Burlingame, Belden & Orton* (*Benton Hanchett*, of counsel), for defendant.

GRANT, J. George W. Gay and the defendant, Berkey, formed a partnership about the year 1865 for the manufacture of furniture. In 1873 they merged the partnership into the Berkey & Gay Furniture Company, of which Mr. Gay was the secretary and treasurer up to the time of his death, September 13, 1899. Mr. Berkey was president during the same time, and is still its president. They were engaged in other transactions, but not as partners. They formed a corporation known as the Oriel Cabinet Company. They bought lands in Texas and Louisiana, which they held as tenants in common. They were interested in a corporation known as the Furniture Caster Association, and several other enterprises unnecessary to mention.

A mutual account existed between them for about 20 years prior to Mr. Gay's death. This account began in November, 1880. Neither kept a book account of their dealings. Unfortunately they never had a settlement, and death has sealed the lips of Mr. Gay, and the statute has

sealed those of Mr. Berkey. The items are not numerous, but large. This may account for lack of accurate accounts and of settlements.

Some of their joint lands in the South were sold, but at Mr. Gay's death they were still the owners, as tenants in common, of considerable tracts of land in Texas. Mr. Berkey evidently looked after the payment of the taxes, and had general care of the southern lands. It appears it was incumbent upon him to pay the taxes. He failed to pay them some years upon the Texas lands. They were sold, and Mr. Berkey bought up the tax titles, taking them in his own name, instead of the names of himself and Mr. Gay. The title thus stood at Mr. Gay's death.

Complainants are the children and sole heirs of Mr. Gay. They failed to secure an accounting with Mr. Berkey, or to obtain from him a deed of their half interest in the tax titles. They thereupon filed this bill for an accounting, and for a removal of the cloud from their title. The bill sets up the various items upon which an accounting is sought, and the claims of the complainants in regard to them. The answer made an issue of fact as to some of these items, but upon the hearing and proofs, taken in open court, the claims of the complainants were conceded, and certain payments by the defendant conceded, and the only items left in dispute are four: (1) One-half of $200, which defendant claims to have expended in a trip to Texas in 1899, to look after the lands owned by the two. (2) One-half of $2,000, for services in his attempt to find a purchaser for these lands. (3) A credit for an interest claimed to have been sold by defendant to Mr. Gay in what is known as the Caster Patents and the Caster Furniture stock. (4) Interest.

The items are so few that the issue might as well have been tried at law as in equity, but for the cloud upon the complainants' title caused by the tax titles standing in defendant's name. At the hearing defendant admitted that the complainants were entitled to a release of the tax titles upon their one-half interest.

The court disallowed the first three items.

The item of $200 was disallowed because defendant owned other interests in Texas, and the testimony was too indefinite to show how much, if any, of that was actually spent in looking after the lands owned by Mr. Gay and Mr. Berkey.

The court gave the same reason for disallowing the $2,000. We thoroughly agree with the conclusion reached by the court below. In addition to that, it may be said that no agreement was shown for the payment of services by Mr. Gay to Mr. Berkey in looking after these lands. They owned them as tenants in common, and, in the absence of an agreement, neither could recover for services against the other, rendered in connection therewith.

It is unnecessary to enter into a detailed statement of the facts in regard to the claim on the part of Mr. Berkey for the interest in the Caster Patents, and the stock which he claims he sold to Mr. Gay, and for which he claims that he had never received payment. If he was entitled to recover anything, it was the full value of a quarter interest in the patents at the time of the sale, which was only $450. It proved to be very valuable, and the stock of the company organized to manufacture the casters became very valuable. We, however, agree with the conclusion reached by the circuit court that this interest was owned and sold by Mr. Fox to Mr. Gay, and not by Mr. Berkey to Mr. Gay.

The only remaining and important question relates to the interest. Complainants claim the right to compute interest at going bank rates, with annual rests. The defendant claims: (1) That no interest can be computed, except from the date of the filing of the bill. (2) That there is no foundation for compounding the interest. (3) That if interest is to be allowed prior to the filing of the bill, it must be computed according to what is known as the Connecticut rule, i. e., simple interest upon the items of each side of the account from the date of the items.

The court in its decree considered the credits in the de-

fendant's account, except certain taxes and expenses pertaining to the Texas lands, as payments, and computed the interest according to the rule adopted by the United States, the Massachusetts courts, and this court, viz., the rule of partial payments. As to the taxes and expenses pertaining to the Texas lands, the court decreed that they were made to third parties, and interest should be computed under the Connecticut rule. The decree for the complainants was $21,307.98.

Complainants base their claim for interest upon an agreement between Mr. Berkey and Mr. Gay. If there was such an agreement, it becomes unnecessary to determine when interest begins to run upon an open mutual account.

On March 9, 1892, Mr. Berkey rendered an account to Mr. Gay. Mr. Gay rendered an account to Mr. Berkey on the following day. Both statements were brief and the items few; neither exceeds two pages of the record. Each computed interest upon the account rendered—one upon the basis of 7 per cent., the other upon the basis of 8. None of the items in Mr. Gay's statement, except the method of computing interest, were disputed by Mr. Berkey. Two or three items in Mr. Berkey's account were disputed by Mr. Gay; the principal one being a credit claimed by Mr. Berkey for the one-fourth interest in the Caster Patents, stated in the account at $5,929.61. This was the only account ever rendered by the parties each to the other. No book account or statement of any kind was found among the papers of Mr. Gay throwing any light upon the claim. The character and the history of the dealings between these parties, as shown in the accounts rendered and by other testimony, is of importance in determining whether there was an agreement to pay interest. The first item of the account is the sale by Mr. Gay to Mr. Berkey of Oriel Cabinet Company stock for $9,500, November 1, 1881. Standing alone, this item would bear interest. Whether the parties at that time contemplated mutual dealing in the future, and an open account therefor, we do not know. Mr. Berkey recog-

nized his obligation to pay interest upon this amount
in a letter to Mr. Gay dated July 18, 1882:

"I write this to show that I acknowledge that I am
personally indebted to you for the stock that I hold in the
Oriel Cabinet Company, less $500 difference in purchase,
with interest from organization of said company."

The next items in the account are the rents due on a
lease by Mr. Gay of a building in Grand Rapids for three
years, at $3,200 per year, dated April 15, 1884, payable
monthly.   These items constituted the entire debit side of
Mr. Gay's statement to Mr. Berkey.   Both are found in
the statement of Mr. Berkey.

The date of the first item—a small one, $250—in Mr.
Berkey's statement, claimed to apply on his indebtedness
to Mr. Gay, is June 2, 1882.   The next is an item of Oc-
tober 1st of the same year, of $421.   No other payments
were made by him until August 28, 1885, as appears by
the accounts.   A claim found in the statement dated May
1, 1884, known as the "Clock Company rent," for $414.40,
was abandoned by Mr. Berkey upon the hearing.   It is
now conceded that upon the amount due for the Oriel
Cabinet Company's stock Mr. Berkey should pay interest.
Thus for about four years Mr. Berkey was indebted to
Mr. Gay in the sum of $9,500, with only two small offsets
or payments.

The lease was also a separate transaction.   If the rent
was not paid, it bore interest just as certainly as though
it had expressly provided for interest.   It was a sepa-
rate and distinct item in the account, bearing interest,
with the evident understanding that when they settled, the
items for rent under the lease should be included.   If the
lease had provided "with interest," it would then have
been upon the same basis as the amount due for the Oriel
Cabinet Company stock.   But, as already stated, each in-
stallment of rent bore interest from the date it became due.
The dealings between these parties did not constitute a
strictly mercantile account.   The transaction was rather
this: Mr. Gay virtually loaned Mr. Berkey money.   He

gave him a lease, with an annual rental, payable monthly. Mr. Gay stood in the position of a creditor loaning money and leasing property, and defendant in the position of a debtor and tenant. The injustice in holding that Mr. Berkey should have this amount of Mr. Gay for so long without interest is apparent. Each recognized this obligation in the accounts rendered, and we think Mr. Berkey in his answer conceded it. Without quoting the allegations of his answer and cross-bill, he prays:

· "That the court shall make and state the account between the parties hereto, and that it compute the interest thereon at the legal rate, but without annual rests; and, · further, that if the court should determine to compute said interest in a different method, that the same rule be applied to both sides of the account between the parties hereto."

We therefore conclude with the circuit judge that there was an agreement to pay interest.

We also think it clear that there was no agreement as to the rate of interest, but that both parties contemplated the interest provided by the law, where there is no stipulation for a different rate. There is nothing prior to the rendition of these statements in 1892 to indicate any agreement as to the rate of interest. Mr. Berkey in his statement computed it at 7 per cent.; Mr. Gay in his at 8 per cent. We think this conclusive that no rate other than that provided by law was agreed upon.

It is vigorously urged by the complainants that there was an agreement to compute the interest with annual rests, and thus compound it. The sole evidence upon which this claim is based is the accounts rendered in 1892. There had up to that time been no settlement, and no striking of annual balances carried into a new statement for the next year. The parties disagreed upon these accounts, and unfortunately nothing was done towards a settlement until one had died. If, as urged with much force by the defendant, the bill alleges an agreement, before the interest became due, to compound it, such an agreement is void and unenforceable. *Hoyle* v. *Page*, 41

Mich. 533 (2 N. W. 665); *Voigt* v. *Beller*, 56 Mich. 140 (22 N. W. 270).

Complainants deny that the bill is susceptible of such a construction. We find it unnecessary to determine the question. After interest becomes due, an agreement to pay interest upon interest is valid; the forbearance to enforce payment and extension of time being a sufficient consideration.

What conversation had taken place between Mr. Berkey and Mr. Gay prior to the rendition of these accounts is of course unknown. There was evidently an attempt to settle, and the claims of each were put into a statement and delivered to the other. Mr. Berkey in his statement computed compound interest, adopting the Connecticut rule. Mr. Gay adopted the Michigan rule. We do not feel justified in saying that this, in view of all the circumstances of the case, amounted to an agreement to compound interest upon the basis of a valid agreement after interest had become due. No accounts were rendered by Gay and assented to by Berkey which would, in our judgment, justify such a holding. We do not think the case comes within the rule of some cases, holding that where certain specific items in an account rendered are objected to and others not, the statement becomes an account rendered as to those unobjected to. Mr. Gay may have said to Mr. Berkey, "I will agree to compound the interest under the rule of partial payments." Mr. Berkey may have said to Mr. Gay, "I will agree to compound interest if we adopt the Connecticut rule." We cannot say that they agreed to either, or that such statements are evidence upon which to base an agreement to pay compound interest. The fact that Mr. Berkey and Mr. Gay, in their dealings with a corporation, assented to settlements with annual rests and compound interest, is no evidence that in their dealings with each other they made an agreement to pay it, or that they settled upon that basis.

The method of computing interest in case of partial payments is recognized by counsel for both sides to be as stated in *Wallace* v. *Glaser*, 82 Mich. 190 (46 N. W. 227,

21 Am. St. Rep. 556). The sole basis for claiming the application of the Connecticut rule is that the items of credits to the defendant were not payments, but independent items. This, of course, cannot be true of several items, which were direct payments to apply on his indebtedness, including one-half the amount received by Mr. Gay for the sale of the Louisiana lands, for which credit was given to Mr. Berkey. It was evidently the understanding between these parties that the amounts paid out by Mr. Berkey in the various transactions in which both were interested should be considered as payments on the amounts he owed Mr. Gay; otherwise, the statute of limitations would have run against the indebtedness due from Mr. Berkey to Mr. Gay, and it is unreasonable to say that Mr. Gay, an experienced business man, would permit it. Defendant's answer, we think, is a complete refutation of his claim that these items were not intended to be payments, but were independent items, upon which he might at any time have sued Mr. Gay. The defendant in his answer admits that "he paid $2,000 to apply on said account, and made other payments from time to time thereafter, fully satisfying said account, as hereinafter more fully set forth." He also admits that the taxes paid by him upon the Texas lands were "upon the agreement, as stated in said bill of complaint, that one-half of the amounts so paid should be credited by said George W. Gay to defendant in the mutual accounts between them." Under these and other allegations of the answer, Mr. Berkey could not have sued Mr. Gay for any of the items he expended in behalf of Mr. Gay. He paid them upon the express understanding that when made by him they were to be a credit to him to apply on his indebtedness to Mr. Gay. The only error made by the court below was in computing the interest on the taxes according to the Connecticut rule. They should have been computed like the other items, on the partial payment rule.

The decree will be so modified, and, as modified, will be affirmed, with costs to the complainants.

The other Justices concurred.