AMOS HALL *et al.* v. EDITH HALL, *as Administratrix, etc.*

No. 15,228. (93 Pac. 177.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Gift Inter Vivos.* The unconditional delivery of personal property by the owner to another, with intent that such other shall immediately and permanently become the owner thereof, and the acceptance of the same by such other, constitute a gift *inter vivos.*

2. ——— *Delivery to a Third Person for Donee's Benefit.* Where the donee is absent or unable to take the gift personally, delivery as above stated to a third person for the benefit of such donee will make the gift complete and valid as if accepted by the donee in person.

3. ——— *Trust Created.* A gift made to a third person for the benefit of another creates a trust which will be administered and controlled like other ordinary trusts.

Error from Linn district court; WALTER L. SIMONS, judge. Opinion filed December 7, 1907. Reversed.

*James D. Snoddy,* for plaintiffs in error.

*John H. Crain,* and *John C. Cannon,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: Austin W. Hall and Corolin F. Hall were husband and wife and resided at Trading Post, in Linn county. She died September 24, 1884, leaving personal property of the value of $4016.50. This property passed into the possession of her husband, who retained it until his death. After his death the defendant, Edith Hall, his surviving widow, was appointed administratrix of his estate. · The plaintiffs in error are the children of Austin W. Hall and Corolin F. Hall, and on July 2, 1903, they commenced this action in the district court of Linn county. to recover the value of the personal property left by their mother, claiming that before her death she gave the personal property to them, leaving it in the hands of a trustee for them; that their father obtained possession of it from such trustee and converted it to his own use. Judgment was rendered for the defendant and plaintiffs bring the case here for review.

The only questions presented here are whether or not the transaction relied upon by the plaintiffs as a gift from their mother constitutes a gift *inter vivos* or a gift *causa mortis*; and, if the former, for how much is the defendant liable. The facts which are claimed to constitute the gift, briefly stated, are these:

Prior to the transaction in controversy Corolin F. Hall received the personal property in question from her father, and for that reason she prized it very highly and guarded it with great anxiety. She refused to let her husband take charge of it or have it in his possession. She had a sister who resided at Montpelier, Vt., to whom she was deeply attached and in whom she had great confidence. This sister's name was Marguerite Carlton, and she was familiarly known as "Marg." In September, 1884, Corolin was sick, which sickness she believed would prove fatal. She sent for her sister "Marg" to come and visit her. On the 19th day of September her sister had started and

was on her way to Trading Post. Mrs. Hall grew worse and feared that she would not live until "Marg" got there.

The personal property in question consisted of notes and mortgages, which were kept by Mrs. Hall in a tin box which fastened with a padlock. During her sickness she kept this box near her all the time, under her personal control. When she decided that death was near at hand her mind turned to her box and its contents. At this time Mrs. Noyes, a cousin of Mrs. Hall, was at the house assisting in caring for her; and Mrs. Thompson, who had for several years before her marriage been employed by Mrs. Hall and who was then her trusted friend, was also present, giving her assistance. Other friends and neighbors were constantly present, also, to watch and wait upon her. Upon this 19th of September Austin W. Hall was also present.

Mrs. Hall feared that she might not live until "Marg" would come, or, if she did, might be unable to make known her wishes as to this property. She stated to those present, including her husband, that she wanted the property to go to her boys, the plaintiffs, who, at that time, were of the ages of eleven, six and four years, respectively. To cover contingencies, she prepared a written memorandum of her wishes, which reads:

"I want the contents of this trunk to be evenly divided evenly between my three boys and want their father and my sister, Mrs. Carlton, to be the ones to decide about the best way of dividing it for them and it is all mine from my father, but the mortgage is not on record at town clerk office for the Gibson farm but Austin says that shall be done immediately and other securities turned in satisfy the outstanding indebtedness on the place and I want Marg to use the interest as far as it will go for the children every year after the debts are all paid for the children until of age.

"Praying that what I have said is right an affectionate mother Corolin."

When this paper was written she handed it to her husband, who read it and said, "There, that will do, I presume; I will see after it," and returned it to Mrs. Hall.   She placed this memorandum with the notes and mortgages in the box, and locked it.   She then handed the locked box to Mrs. Noyes, and requested her to keep it until "Marg" came and then give it to her.   The key to the box she delivered to Mrs. Thompson, likewise requesting her to keep it until "Marg" came and then give it to her.

Mrs. Noyes never allowed the box to be out of her possession after she received it.   She carried it with her from room to room, and kept it at all times within her reach.   Mrs. Thompson kept the key in the same way until "Marg" came, when both the box and the key were delivered to her in the presence and sight of Mrs. Hall, who was not yet in a seriously weakened condition either physically or mentally, although she died within five days thereafter.

"Marg" kept possession of the box from the time she received it until after the death of Mrs. Hall. Nothing was said or done by Mrs. Hall after the box was delivered to Mrs. Noyes to indicate any desire to change the disposition of this property from that which she had made.   After the burial of Mrs. Hall, and when Mrs. Carlton was about to return to her home at Montpelier, Vt., she had a talk with Austin W. Hall, who stated that it was his desire to carry out in every particular the wishes of his deceased wife with respect to the personal property which Mrs. Carlton then held, and that he would, to the best of his ability, work to that end.   Mrs. Carlton thought Mr. Hall was in earnest and would conscientiously do as he said; she therefore concluded that the wishes of her deceased sister could be better carried out by him than by herself, and arranged to deliver the property to him as administrator of the estate of Corolin F. Hall. They together visited the probate judge of Linn county and presented the whole matter to him.   Hall told the

probate judge that he desired to carry out the wishes of his wife in every particular; Mrs. Carlton stated that she believed that Mr. Hall would do so or she would not consent to let him have the property. There was no occasion for the judge to object, and Hall was then and there appointed administrator of the estate of Corolin F. Hall, deceased, and received from Mrs. Carlton the notes and mortgages from the tin box, and gave a receipt therefor, which receipt, with the memorandum made by Corolin F. Hall at the time she last locked the box, was placed therein. Mrs. Carlton retained possession of these and took them with her when she returned home.

Hall returned an inventory of the property of Corolin F. Hall received by him from Mrs. Carlton at the value of $4016.50. Afterward, and during the administration of the estate, which closed July 6, 1887, he received, as interest on the notes, the additional sum of $474.72, making the aggregate sum of $4491.22. Out of this he paid in taxes and in releasing a mortgage on real estate belonging to the plaintiffs the sum of $1418, leaving a balance due them on that date of $3073.22. On the same day, July 6, 1887, he was appointed guardian for the plaintiffs, who were minors, and, as such, received the funds remaining in his hands as administrator.

Upon the order of distribution made at the close of administration Austin W. Hall was recognized as an heir of Corolin F. Hall, and was awarded one-half of the estate in his hands. As the boys reached the age of majority each received the amount due him as shown by the guardian's account. They owned a farm, from which rent was collected, and taxes were paid thereon and interest was collected on notes. All of these items were mingled in the account so that it is difficult to ascertain from the facts before us what the true state of the account is. Mr. Hall erected a monument to the memory of his wife, the expense of which was paid out of the personal property in controversy,

as were the educational expenses of some of the boys.

The youngest son, John A. Hall, lived with his aunt, Mrs. Carlton, at Montpelier, and afterward at La Cygne, Kan. On August 9, 1901, Mrs. Carlton died. A few days prior thereto she told John the story of his mother's death, and of the tin box, and then delivered to him the box, with his mother's memorandum therein. The following December he informed his brothers. He at that time was attending school in Michigan, and his brothers were in Kansas. This was the first information any of the boys ever had concerning his mother's dying solicitude for his welfare.

Corolin F. Hall left, in addition to the personal property in question, 250 acres of land, which Austin W. Hall conveyed by quitclaim deed to the plaintiffs.

From these facts we conclude that Corolin F. Hall conveyed all of her title to the personal property in controversy to the plaintiffs; that the transaction constituted a gift *inter vivos*, being an absolute, unconditional delivery of personal property by the donor to a third person, as trustee for the donees, with the intent that such property should immediately and permanently vest in such donees. The only resemblance it bears to a gift *causa mortis* is that the donor realized that she was about to die, and probably if she had not believed that death was near at hand the gift would not have been made at that time. A person has the right to give away his property at any time while life lasts. Contemplation of the near approach of death is, no doubt, very often the cause which induces gifts to be made *inter vivos*.

Austin W. Hall knew when he received this property that it belonged exclusively to the plaintiffs, and he held it as trustee for them. He or his estate is responsible therefor. The probate court had no jurisdiction to administer the property of these minors as the estate of Corolin F. Hall, and the action taken in such proceeding is not binding on the plaintiffs.

The appointment of Austin W. Hall as guardian,

however, was proper, and whatever of this property went into the guardian's hands must be regarded as accounted for; but the guardian had no right to expend this trust fund for his own purposes, nor in payment of that for which the plaintiffs were not liable. They may have been pleased as children to have an expensive monument erected at the grave of their mother, but they were not liable therefor. Money paid to relieve their other property of liens and encumbrances would be equivalent to the payment of so much money.

We have not been called upon to interpret the memorandum of Mrs. Hall, which accompanied the gift, as to how far its provisions might authorize expenses for educational purposes, and have not done so. We only decide that Mrs. Hall conveyed to these plaintiffs the property in controversy by a gift *inter vivos*, and it vested permanently in them before her death.

The judgment of the district court must therefore be reversed. We are not sufficiently advised to direct the proper judgment in favor of the plaintiffs. The judgment is reversed, with direction to enter judgment in favor of the plaintiffs for such amount as may, upon inquiry, in accordance with the views herein expressed, be just and proper.