(80 Misc. Rep. 468.)

## In re BLECKWEHL'S WILL.

(Surrogate's Court, Kings County.　April, 1913.)

1. TRUSTS (§ 136*)—CONSTRUCTION—PASSIVE TRUST.

Where a will bequeathed certain property to 2 persons, in trust to hold same during the lives of 2 of testator's children for the use and occupation of 4 of them while they remained unmarried, and provided that the property should be free from any charge for such occupancy, except carrying charges,' but that in the event any 2 of the beneficiaries should consent, or the trust be terminated, the property should be sold and the proceeds divided equally among testator's 12 children, a mere dry or passive trust was created, and there was no power or duty in the trustees to receive the rents, issues, or profits.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179; Dec. Dig. § 136.*]

2. TRUSTS (§ 136*)—TRUSTEES—RIGHT TO RECEIVE INCOME.

The right to receive the income of a trust estate cannot be implied from the nature of the duties of the trustees, and under the express provisions of Real Property Law (Consol. Laws 1909, c. 50) § 97, no estate can vest in them, even where there is an actual devise to them, unless they are also empowered to receive the rents and profits.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179; Dec. Dig. § 136.*]

3. TRUSTS (§ 11*)—DRY TRUST—VALIDITY.

That a provision of a will created a passive trust did not invalidate the provision, so that testator's property passed immediately to his heirs, contrary to his declared intent; a passive trust not being an invalid trust, though excluded from the family of express trusts.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 9; Dec. Dig. § 11.*]

4. WILLS (§ 688*)—CONSTRUCTION—INTENT OF TESTATOR—TRUSTS.

Where testator's attempt to carry out his intention, that 4 persons shall have the use and occupation of his lands during the lives of 2 of their number by means of a trust, fails, a similar legal trust will, in so far as possible, be substituted for the equitable estate intended to be created, and the will be construed as though it devised the property to the 4 children named during the lives of the 2 named, with remainder as specified in the will at the end of the 2 lives designated.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1644–1649; Dec. Dig. § 688.*]

Proceedings upon the probate of the will of Erich A. Bleckwehl, deceased.　Decree according to opinion.

Watson & Kristeller, of New York City, for proponent.
Herzfeld & Sweedler, of Brooklyn (Hermon H. Shook, of Brooklyn, of counsel), for Annie Breitenbecker.

KETCHAM, S.　[1] The will propounded is in part as follows:

"Fifth. I give, devise and bequeath to Edward Bleckwehl and Walter Bleckwehl, in trust nevertheless, the house known as '393 East Third Street,' in the borough of Brooklyn, together with all the furniture and contents thereof, except as hereinbefore specifically bequeathed, to hold the same during the lives of my daughters, Mildred and Florence, and for the use and occupation of my daughters, Rebecca, Florence and Mildred, and my son, Walter Bleckwehl, while they remain unmarried; free, however, of any charge for said

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occupancy, except carrying charges, but in the event that any two of the aforementioned beneficiaries shall consent thereto before the termination of said trust, or at the termination of said trust, I direct that the property be sold and the proceeds of such sale shall be divided equally among my children, Emma Matilda Desch, Rebecca Bleckwehl, Henry Bleckwehl, Edward Bleckwehl, George Bleckwehl, Albert Bleckwehl, William Bleckwehl, Lulu Haviland, Florence Bleckwehl, Walter Bleckwehl, Mildred Bleckwehl and Annie Breitenbecker; the issue of any deceased child to take their parent's share per stirpes."

This is followed by a residuary gift to the 12 persons named in the preceding paragraph. In the trust for the two lives, which is attempted in the fifth paragraph, there is no expression or implication from which there can be derived any power or duty in the trustees to receive the rents, issues, and profits.

[2] The right to receive the income cannot be implied from the nature of the duties of the trustees. Even where there is an actual devise to the trustees, no estate can vest in them unless they are also (that is, in addition to the devise to them of the lands), empowered to receive the rents and profits. Real Property Law (Consol. Laws 1909, c. 50) § 97.

Again, the statute declares that, although a disposition by devise be made to any person for the use of another, no estate vests in the trustee. Real Property Law, § 83.

No active duty of the trustees can be spelled out from the provision that they shall "hold" the land. Hence none of the express trusts recognized by statute (Real Property Law, § 96) results, and the trust, such as it is, becomes dry and passive.

[3] But the critic of this will argues that, because the trust is dry and passive, there is no virtue left in the provision by which it was created, and that the lands must descend to the heirs of the decedent. This contention assumes that a passive trust is the same thing as an utterly void trust.

Far different from an invalid trust is a trust for the use of another. Unless there was a distinction, the law would not have labored to preserve the two terms. The passive trust, though by our statute excluded from the family of express trusts, remains one of the oldest and most respectable institutions of legal history. When found in a will, it is not an unreality, like an invalid trust. It is preserved and effectuated in every detail, so far as to carry out all of its purposes.

The law does not reject its intention. Rather does it insist upon giving effect thereto, but only in the form of a legal estate in the proposed beneficiary, instead of the equitable estate which the defeated trust had contemplated.

[4] It is impossible that a trust in one for the use of another can be regarded as "completely extinguished." It must doubtless be shut out from among the statutory express trusts; but its intention must survive, and the law must be zealous and astute to reproduce in the form of a legal estate every element which in the case of a beneficial estate would have been enjoyed, if the trust had been wholly successful.

The problem of this will is to rescue from its unfortunate language every wish of the testator which is not contrary to law. Its obvious intention was that four persons should have the use and occupation of the lands during the lives of two of their number, subject to certain incidents to be separately considered. The attempt of the will maker to accomplish this by a trust has failed; but there is no warrant for the contention that his effort itself has failed, though his method is condemned. If, instead of the equitable estate which he meant to create, there be substituted a legal estate of the same extent and nature, so far as possible, then the will is to be paraphrased as follows:

"I devise the house to my four children named during the lives of two of their number named, with remainder to others at the end of the two lives designated."

It is contended that the habendum, "to hold the same during the lives," etc., pertains only to the trustees, and must vanish from consideration as soon as the trust is found deficient. But the habendum was to hold for the period indicated and for the use and occupation of the beneficiaries. The period was designed only as a measure of the time during which the beneficiaries might use and occupy. It was wholly personal to those who might have the use of the estate. If, then, there was created a legal estate for a period measured by two lives, it remains to ascertain the several interests of those to whom such estate was given.

"Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy." Real Property Law, § 66.

Each of the four devisees then took one-fourth of the subject of the devise, which, except for the extinction of his estate by the vicissitudes of marriage or by the consent of the beneficiaries, endured during the two lives designated, and upon his decease within the longer of such two lives would pass to his heirs at law. If, then, each of the beneficiaries holds his own share in common, the provision as to marriage must mean that each individual's share is to be curtailed only by his own marriage, and that, upon that event in the life of any one of these devisees, his share will pass, not to the surviving tenants for the two lives, but to the residuary devisees.

It is obvious that the tenancy for the two lives may be shortened by the consent provided for in the will; that upon the complete termination of the initial tenancy, however effected, the attempted trust as to the remainder must fail on the grounds indicated supra as to the estate during the two lives; and that the lands will thereupon vest in the 12 persons named in the fifth paragraph, with power of sale in the so-called trustees for the purposes of conversion and division.

The construction thus indicated may be embodied in the decree. Decreed accordingly.