## LULU M. LARKIN AND MILDRED K. ROWE v. JAMES ROSCOE McCABE.[1]

July 11, 1941.

Nos. 32,881, 32,886.

[1]Reported in 299 N. W. 649.

*James E. O'Brien, Leo P. McNally, Clyde W. Fiddes,* and *Amasa E. Wheeler,* for appellant Mildred K. Rowe and respondent Lulu M. Larkin.

*Fletcher, Dorsey, Barker, Colman & Barber* and *W. F. Marquart,* for appellant James Roscoe McCabe.

PETERSON, JUSTICE.

Plaintiffs are sisters. Defendant is their brother. There are two other sisters, Etta Jane Irvine and Jessie P. McClintock. All are the children of James McCabe by his first wife. McCabe died on January 15, 1936.

Each plaintiff sues to recover a $10,000 McCabe Bros. Grain Company, Ltd. Gold Bond alleged to have been given her by the decedent and wrongfully withheld from her by defendant, who came into possession of the bonds under a claimed subsequent gift by the father to him; to establish that the defendant holds title to a farm in North Dakota in trust for each of them as to an undivided one-fifth portion; and for an accounting. The court below held that Mrs. Larkin was entitled to recover the bond which she claimed; that the plaintiff Rowe was not entitled to recover the bond which she claimed; that the trust be decreed in the land (to which defendant consented); that defendant was entitled to recover the money advanced by him on account of the farm with interest, and to a lien on the farm for the amount of the recovery;

and that he was not entitled to recover for personal services rendered managing and looking after the farm.

Plaintiff Rowe appeals from the judgment so far as it denies her recovery of the bond and allows defendant interest on the money advanced by him. Defendant appeals from the judgment so far as it adjudges that plaintiff Larkin is entitled to recover her bond and that he is not entitled to recover for his services.

McCabe was a man of advanced age and considerable means. He and his children had a strong affection for each other. The testimony was that this feeling included the "in-laws." His repeated statements reveal that he had a fixed intention to divide his property among his children. He had practically accomplished this purpose during his lifetime. The children appreciated his generosity, which was restrained only by the advice of those with whom he consulted.

In 1925 McCabe conveyed to his children a 655-acre farm in North Dakota subject to a $19,500 mortgage and accumulated interest. The farm had been the family home, and there was no little family sentiment concerning it.

In February 1933 he called Mrs. Irvine and Mrs. Larkin in conference at his office for the purpose of dividing his remaining property among his children. He then had five $10,000 bonds of McCabe Bros. Grain Company, Ltd. and stock in that and other corporations. He outlined to his daughters his plan of distribution. He intended to give defendant, who is referred to as Roscoe and Rox, more stock in the McCabe companies than the girls. He had an envelope for each child containing the securities he intended to give them. The stock certificates had been made out in the names of the children. The record does not show what securities he gave Roscoe. He gave each daughter 100 shares of McCabe Bros. Grain Company, Ltd., preferred stock, 36 shares of the McCabe Bros. Company stock, and 100 shares of International Elevator Company stock. He also had a $10,000 bond for each daughter.

He intended to retain the income from the securities during his lifetime. After some discussion in which Mrs. Irvine and Mrs. Larkin expressed profuse appreciation of their father's generous gifts, they advised him to keep the bonds for the reason that he might need them for his own support. Accordingly, he decided to distribute the other securities and keep the bonds.

Slips were then made out to be attached to the stock certificates and signed by each donee by the terms of which the donee agreed to turn over to Mr. McCabe any dividends paid on the stock "while he lives." Mrs. Irvine and Mrs. Larkin signed the slips for their stock certificates then and there. Mrs. Irvine testified that she took her stocks with her and placed them in her and her husband's safety deposit box, where they have since remained. She also testified that a few days afterwards she accompanied her father to Duluth, where he delivered Mrs. Rowe's stocks to her.

The intention to distribute the bonds persisted in Mr. McCabe's mind. During the months following he conferred with his son-in-law, George D. McClintock, a lawyer of good reputation and ability, about gifts of the bonds. McClintock's testimony is that he advised McCabe "that he should be careful to make a delivery to someone of those bonds if he was contemplating making a gift."

Still actuated by the intention to make gifts to his daughters of the bonds, McCabe went to McClintock's office sometime in June 1933. He had with him four large envelopes, one for each daughter, in the upper left-hand corner of which was written the list of securities the envelope contained. The list included the stocks given to the daughters which have been mentioned and a $10,000 bond, giving the number.

McCabe stated either that he had given or that he was giving the securities to his daughters. He handed the envelopes containing the securities for plaintiffs and Mrs. Irvine to McClintock and asked him if he would keep the envelopes and the securities therein contained for said daughters. McClintock took the envelopes containing the securities and told him that he would keep

them for the daughters. McCabe assigned reasons for not delivering the securities to Mrs. Rowe and Mrs. Irvine, but not Mrs. McClintock. He said that he feared Mrs. Irvine might spend the proceeds on her son "Jim" and that Mrs. Rowe would dissipate the proceeds of hers. He said that he was going to deliver Mrs. Larkin's securities to her since he knew that she would "hang on" to them.

He advised McClintock at the time that he desired to have during his lifetime the income from the bonds and the dividends on the stocks. Then, in McCabe's presence, McClintock wrote on Mrs. Rowe's envelope, "I am holding the above for Mildred McCabe Rowe for safekeeping," and signed it "George D. McClintock." He wrote a similar inscription on the envelopes for Mrs. Irvine and Mrs. McClintock and signed them. He and Mr. McCabe went to McClintock's safety deposit box, where the envelopes containing the securities were deposited. McCabe had no access to the box. Later McCabe went to Mrs. Larkin's home, where he personally delivered her securities to her.

Before delivery, McClintock checked the contents of each envelope. Those for Mrs. Rowe and Mrs. Irvine were correct as to listing and contents. There were some errors in the stock certificate numbers listed on the envelopes for Mrs. Larkin and Mrs. McClintock, which McClintock corrected. There was no error as to any bond number.

About one month afterwards, on July 19, 1933, McCabe again went to McClintock's office and said that he would like "to leave" Mrs. Irvine's and Mrs. Rowe's bonds at the McCabe Brothers' office. Thereupon McClintock gave him the entire contents of the envelopes containing their securities. He made and signed an endorsement on the envelopes to that effect under date of "7/19/33." Mrs. Larkin returned her bond, but not the stocks, to her father. Later Mrs. McClintock returned her bond to her father in the presence of her husband.

McCabe put the bonds in the vault in the office of the McCabe Bros. Company. Defendant by reason of his connection with the company had access to the vault and to the bonds.

When the father came to get Mrs. McClintock's bond there was some discussion about preparing some documents to show the gifts. Pursuant to the father's suggestion, McClintock sent a letter to defendant on October 20, 1933, enclosing a form of legend to be endorsed on the envelope containing the bonds and of receipt to be furnished to each daughter. The letter recites the gifts to Mrs. McClintock and the other daughters; that the father reserved the income from the bonds during his life; that "the gift itself was completed by delivery and acceptance"; that it was the father's desire that defendant hold the bonds during his lifetime, clip the coupons, apply the same to his use, and "upon his death they be redelivered by you to the owner thereof"; that the father suggested the preparation of the form of legend to be endorsed on each envelope "so as to properly identify the same as the property of the one to whom the gift has been made"; that the procedure pursued was a proper one, since the only essential thing to the making of a valid gift was that there be delivery and acceptance by the donee; that "that has been accomplished in this instance"; and that all that remained to be done was to keep such records that defendant "may readily prove that the gift, delivery and acceptance actually occurred and the time thereof," to the end that there should be no contradictory circumstances whereby the father's actual intention might be defeated by subsequent creditors or others. The letter suggested that defendant show it to his father, and if it did not correctly set forth the matter as he wanted it to advise McClintock.

Defendant received the letter and showed it to his father, for whom an extra copy was enclosed. Neither of them expressed any dissent from anything contained in the letter until after the father's death, when defendant asserted ownership of the bonds except the one given to Mrs. McClintock.

On January 20, 1934, defendant advised Mrs. McClintock by letter that their father had delivered her bond to him which he was to hold during the father's lifetime, paying him the income and at his death to deliver the bond to her. Defendant neither executed the legends and receipts for the other daughters nor in any manner advised them that he was holding their bonds for them.

Defendant testified that when his father brought the securities to the McCabe Bros. Company's office, after obtaining them from McClintock, his father kept them in separate envelopes for each daughter with the name written thereon and that the envelopes were placed in the company's vault. Although he had received the income from the securities subsequent to his father's death, defendant did not include the same in either his federal or state income tax return. In preparing the federal estate tax return, McClintock asked defendant if the bonds should be shown as gifts to the daughters. Defendant said, "That is about right" or "I guess that is it." Mrs. Irvine wrote a letter to McClintock for the purpose of such return in which she stated that the father made a gift to her of her bond.

On March 1, 1934, the farm came into the picture again. In 1928 the mortgage which was on the farm when it was transferred to the children was foreclosed, and the mortgagee became the owner as the purchaser at the foreclosure sale. After the expiration of the period of redemption, title was conveyed to defendant in consideration of $6,000 cash, part of which each of the children contributed and a $16,000 mortgage given by defendant and his wife. This mortgage came due on March 1, 1934, with the accrued interest. On March 14, 1934, defendant made a settlement with the mortgagee for $14,500, which he borrowed. On the same day his father gave him all the bonds (four $10,000 bonds) except Mrs. McClintock's, by an instrument in writing.

After the father's death defendant claimed ownership of the farm. The daughters claimed that they were entitled to their shares. Defendant offered to turn over to Mrs. Larkin, Mrs. Rowe,

and Mrs. Irvine their bonds if the daughters would relinquish their claims to the farm, which they refused to do. Defendant had the exclusive possession of the farm and appropriated the rents and profits to his own use. He refused to recognize that he took title to the farm upon constructive trust for the benefit of his sisters until he filed his answer in this case. While he held title to the farm he advanced $12,542.22 for obligations and operating deficits, on which the interest amounted to $3,328.89. The court below allowed him reimbursement for what he paid in securing and protecting the estate. In addition, although he did not ask for it and said that he had made no charge therefor, he was allowed the interest also. For these items defendant was given a lien on the daughters' shares of the farm.

He devoted a great deal of time in looking after the farm, for which he claimed compensation at $50 per month. This the court disallowed.

The facts were found below as we have stated them with some minor exceptions. The finding of a gift to Mrs. Larkin was based on a finding of delivery. The court below was of the opinion that "there is no evidence justifying a conclusion that Mr. McClintock was authorized to deliver the bonds to the other three daughters at any time. Hence it would seem that Mr. McClintock was the agent of Mr. McCabe, and his authority was simply to hold the bonds for safekeeping."

The argument assumes, as it must, that delivery was essential, since a bond payable to bearer is a negotiable instrument, title to which can be transmitted only by endorsement or delivery. Mason St. 1927, § 7073 (N. I. L. § 30).

The capacity in which McClintock received the bonds for the three daughters was not designated. Neither he nor the father indicated by an express declaration whether he was an agent, bailee, or trustee. It is fair to assume that the father not only never gave the matter a thought, but that he cared much less what McClintock's legal relationship was. His purpose was to carry

out his intention to make effective gifts, and McClintock was to be his depository for that purpose.

There can be no doubt concerning McCabe's fixed intention to divide the bonds as well as the other securities among his daughters and to execute that intention by a delivery of the securities to McClintock. The court found such intention as a fact—a result which was inescapable. McCabe consulted McClintock to learn the means by which to give effect to his intention and was told that a delivery to "someone" was necessary. The securities were safe in the vault of the McCabe Bros. Company, as the evidence shows. He took the securities to McClintock and had him deposit them in the safety deposit box to make a delivery to complete the contemplated gifts.

Determination of McClintock's status involved not so much the finding of a fact as it did the drawing of a conclusion of law from the facts shown and found by the court. In re Trust Under Will of Holden, 207 Minn. 211, 291 N. W. 104.

The absence of an express designation by the parties makes it incumbent on the court to determine McClintock's status as depository. Since McCabe never thought of such a designation, but was concerned only with the consequences of the delivery, which was to make the gifts, the court in determining McClintock's status should, so far as it is permissible, attach those consequences to the transaction which would effectuate that intention.

The depository's status is a simple question where the delivery is made to a person previously authorized or designated by the donee or grantee. Where there is no such prior authorization, difficulties arise. The questions then arise whether the depository was the agent of the donor or the trustee for the donee. Here all the evidence is in favor of the view that McClintock was not the father's agent and that he was the trustee for the daughters. In favor of the negative on the question of agency for the father was the evidence that McClintock was neither the father's agent nor attorney. True, he was the father's son-in-law, but that marriage

relationship was perfectly consistent with his acting as any other third person so far as concerned the delivery of the bonds. Affirmatively showing that McClintock was acting as trustee for the daughters is the evidence that he received and agreed to hold the securities for the daughters under the arrangement with the father. McCabe's request was that he accept delivery "for the girls." McClintock indicated in writing that his acceptance of the securities was for the daughter for whom each gift was intended. He wrote on Mrs. Rowe's envelope: "I am holding the above [referring to the securities listed on the upper left-hand cover of the envelope] for Mildred McCabe Rowe for safekeeping," and signed his name "George D. McClintock." Delivery and acceptance for her benefit was so clearly shown as to eliminate all doubt.

Some point is made that because the attempted gift to defendant was by a written instrument the absence of a writing evidencing the gifts to the daughters shows that no gifts were intended. We attach no importance to the absence of a writing. A writing would only furnish evidence of the fact that the gifts were made. The evidence leaves no doubt of that fact. The evidence showing an intention to make the gifts and a delivery to give effect to that intention is undisputed and conclusive. The court found the facts which support the gifts. A writing could not make the facts any clearer.

It was not necessary to label McClintock as the trustee for the daughters. Delivery by the donor to a third person for the benefit of the donee by the use of such expressions as "for the donee," or "for the use of the donee," or "to keep for the donee," or similar expressions indicate an intention that the depository shall receive delivery not as the donor's agent, but as the agent of or trustee for the donee. Innes v. Potter, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896; Grissom v. Sternberger (4 Cir.) 10 F. (2d) 764; Smith v. Wiggins, 3 Stew. (Ala.) 221; Nolen v. Harden, 43 Ark. 307, 51 Am. R. 563; Devol v. Dye, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439; Hall v. Hall, 76 Kan. 806, 93 P. 177; Borneman v.

Sidlinger, 15 Me. 429, 33 Am. D. 626; Hunter v. Hunter, 19 Barb. (N. Y.) 631; Coutant v. Schuyler, 1 Paige Ch. (N. Y.) 316; In re Cummings, 181 App. Div. 286, 168 N. Y. S. 828; Lucas v. Lucas, 1 Atk. 270 (*per* Lord Hardwicke); Mechem, "The Requirement of Delivery in Gifts of Chattels and of Choses in Action Evidenced by Commercial Instruments." 21 Ill. L. Rev. 568, at p. 590.

In many of the cited cases the depository was said to be the donee's agent. But in most of them the exact status of the depository was not important. Here it is. Agency is a consensual relationship. One cannot be the agent of another except by his authority. Hence McCabe could not appoint McClintock to be the agent of his daughters.

The rule is well settled that delivery of a gift to third party for the benefit of the donee is sufficient, Innes v. Potter, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896, *supra*, just as is delivery of a deed, Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614; 2 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 2666. The depository is treated as a trustee for the donee. Innes v. Potter, *supra*; Varley v. Sims, 100 Minn. 331, 111 N. W. 269, 8 L.R.A.(N.S.) 828, 117 A. S. R. 694, 10 Ann. Cas. 473; Culver v. Carroll, 175 Ala. 469, 57 So. 767, Ann. Cas. 1914D, 103; Devol v. Dye, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439, *supra;* Wheelwright v. Wheelwright, 2 Mass. 447, 3 Am. D. 66 (*per* Parsons, Ch. J.); Executors of Vought v. Vought, 50 N. J. Eq. 177, 27 A. 489; Hathaway v. Payne, 34 N. Y. 92; Restatement, Trusts, § 32, comment *c*, and § 35. In Kokomo Trust Co. v. Hiller, 67 Ind. App. 611, 116 N. E. 332, 336, which involved the sufficiency of the delivery of a deed by the grantor to a third party for the benefit of the grantee, the court said at p. 626:

"Where the grantor, after signing the deed, delivers it to a third person with unconditional instructions that he either presently or on the happening of some inevitable event deliver it to the grantee, the grantor reserving no right to control the disposition of the deed or to modify it, a trust thereby arises of which the grantee is the beneficiary, and which trust may be enforced by

him, but which may not rightfully be violated by either the grantor or such third person."

The delivery is said in some of the cases to be for the "use" of the donee or grantee, that is, in trust for him. Thatcher v. St. Andrew's Church, 37 Mich. 264; Doe dem. Garnons v. Knight, 5 Barn. & Cress. 671 (cited by us in Stevens v. Hatch, 6 Minn. 19 [64] at p. 25); Xenos v. Wickham [1866] L. R. 2 H. L. 296, 16 L. T. N. S. 800.

A trust created by delivery of chattels to a third person is valid although the beneficiary had no notice of it. Innes v. Potter, 130 Minn. 320, 153 N. W. 604, and the authorities, *supra*. Previous notice to the beneficiary of the creation of a trust is not necessary. Kessler v. Von Bank, 144 Minn. 220, 174 N. W. 839; Walso v. Latterner, 140 Minn. 455, 168 N. W. 353; McMahon v. German-Am. Nat. Bank, 111 Minn. 313, 127 N. W. 7, 29 L.R.A.(N.S.) 67; Restatement, Trusts, § 35.

It has been held that where, as here, the income is given directly to the life tenant and the sole duty of the trustee is to deliver or pay over the trust property to the remainderman on death of the life beneficiary, a passive trust is created. In re Estate of Wolanski, 157 Misc. 470, 283 N. Y. S. 797. Passive trusts of freehold interest in land are executed by Mason St. 1927, §§ 8083, 8084. In other jurisdictions this result is accomplished by the statute of uses, 27 Hen. VIII, c. 10, which is regarded as part of the common law, except where the rule has been altered by statute and in England, where the statute has been repealed. The statute of uses and modern statutes relating to the execution of passive trusts in land do not execute passive trusts of personalty. Rust v. Evenson, 161 Wis. 627, 155 N. W. 145; Restatement, Trusts, § 70. In analogy to the rule applicable to passive trusts of land, a passive trust of personalty is treated as vesting both the legal and equitable title in the beneficiary upon the ground that the trust is without purpose. In some jurisdictions it is held that such a trust is automatically executed. In others it is held that the

beneficiary may compel a conveyance to him of the legal title. Bellows v. Page, 88 N. H. 283, 188 A. 12; In re Estate of Sweeney, 155 Misc. 461, 279 N. Y. S. 927; Security Nat. Bank v. Sternberger, 207 N. C. 811, 178 S. E. 595, 97 A. L. R. 720; Smith v. Smith, 254 Ill. 488, 98 N. E. 950; 1 Bogert, Trusts & Trustees, § 207; 1 Scott, Trusts, § 70. The law attaches different consequences to unauthorized trusts. In the case of a trust which is invalid because the law does not permit it to be created, the donor's title is unaffected and the property remains as a part of his estate. The law permits the creation of a passive trust with the attached consequence that it shall be executed so as to vest the legal title and the beneficial interest in the beneficiary. In the case of a passive trust only the separation of the legal and beneficial interests are prohibited. Delivery to a passive trustee is good and title passes. In re Will of Bleckwehl, 80 Misc. 468, 142 N. Y. S. 449; 65 C. J. p. 526, § 271, note 88.

The facts found by the court as well as the evidence compel the conclusion that McClintock received the securities as trustee for the daughters and not as agent for the father.

The donor's intention should be given effect as gifts in trust, execution of which occurred automatically or which could have been compelled by the donees. The life tenant, the father, having died, the donees in remainder, the daughters, are entitled to the bonds absolutely.

█ The redelivery of the securities to McCabe by McClintock did not reinvest him with title. It is obvious that delivery was made by McCabe to McClintock to vest title in the daughters. The redelivery by McClintock was consistent with their continued ownership, since the purpose was to enable McCabe as the life tenant to collect the income. Where, as here, the gift has been executed so as to pass title to the donee, a return of the property to the donor for a purpose not inconsistent with the continued ownership of the donee does not reinvest the donor with title.

McDonald v. Larson, 142 Minn. 244, 171 N. W. 811; 28 C. J. p. 642, § 36.

The attempted gift to defendant about nine months after the gifts to the daughters was ineffectual. McCabe then had no title to transfer. He could not revoke the gifts which he had made. Kauffman v. Kauffman, 137 Minn. 457, 163 N. W. 780; 3 Dunnell, Dig. § 4023; Coward v. DeCray, 38 Cal. App. 290, 783, 176 P. 56, 57; Annotations, 3 A. L. R. 902; 60 A. L. R. 1055.

The reservation of the income from the securities during McCabe's lifetime was consistent with the gifts. A present gift, as here, reserving to the donor the income for life, is a valid gift *inter vivos* although enjoyment is postponed until the donor's death. Innes v. Potter, *supra;* Ekblaw v. Nelson, 124 Minn. 335, 144 N. W. 1094; Annotations, 3 A. L. R. 906; 60 A. L. R. 1056.

We do not deem it necessary to dilate upon the lack of merit of the contention that McClintock was not authorized to deliver the bonds to the daughters for the alleged reason that no time was fixed for such delivery. A direction to deliver at death definitely fixes the time of delivery when that event occurs, as it inevitably must. Innes v. Potter, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896, *supra;* McDonald v. Larson, 142 Minn. 244, 171 N. W. 811; Nelson v. Olson, 108 Minn. 109, 121 N. W. 609; Rosenau v. Merchants Nat. Bank, 56 N. D. 123, 216 N. W. 335, 60 A. L. R. 1040.

The evidence abundantly establishes a gift of the bond to Mrs. Larkin by her father. All the elements of a gift *inter vivos* were proved—intention to make a gift, delivery to the donee, absolute disposition of the property given, acceptance by the donee, and admitted mental competency of the donor. Owens v. Owens, 207 Minn. 489, 292 N. W. 89.

What we have said concerning the gifts to McClintock in trust for the other daughters applies with equal force to the redelivery of the bond by Mrs. Larkin to her father and to revocation, if any,

which might otherwise be implied from the father's subsequent attempted gift of her bond to defendant.

■ The defendant was not a trustee of the farm in a true sense. Until the time of judgment he was not a trustee. Meanwhile he had denied that his sisters had any title or interest in the farm. He asserted and exercised exclusive ownership, possession, and control. The expenditures which he made were made not on his sisters', but his own, behalf.

A constructive trust is a remedial device by which the holder of the legal title is held to be a trustee for the benefit of another who in good conscience is entitled to a beneficial interest without reference to the intention, or the lack of it, of the parties. As a matter of justice, the trustee of a constructive trust is entitled to reimbursement for lawful expenditures in securing and protecting the estate of the beneficiary. Citizens State Bank v. Wade, 165 Minn. 396, 206 N. W. 728. In case of cotenancy, a tenant making payments is entitled to interest only from the time he demands contribution. Where, as here, the cotenant demanding interest has been in possession of the land asserting title in himself and receiving the rents and profits, and a tender by his cotenants of the amount due, if any, for expenditures made by him on account of the common property would be futile, such cotenant is entitled to interest on such expenditures only from the entry of judgment. Willmon v. Koyer, 168 Cal. 369, 143 P. 694, L. R. A. 1915B, 961; 14 Am. Jur., Cotenancy, § 43, note 7.

Consequently it was error to allow defendant interest on the amounts expended by him.

■ Denial of compensation to defendant for his services was correct. Of course a trustee is entitled to compensation for services rendered by him as such. The services in question were rendered by defendant not as a trustee, but as a cotenant holding possession, asserting title adverse to his cotenants and appropriating the rents and profits to his own use. Absent an agreement for compensation, a cotenant is not entitled to compensation for

services rendered in managing, operating, or taking care of the common property. Staples v. Pearson, 230 Ala. 62, 159 So. 488, 98 A. L. R. 852; Gay v. Berkey, 137 Mich. 658, 100 N. W. 920; Franklin v. Robinson, 1 Johns. Ch. (N. Y.) 157 (*per* Chancellor Kent); Redfield v. Gleason, 61 Vt. 220, 17 A. 1075, 15 A. S. R. 889; 2 Tiffany, Real Property (3 ed.) § 450, note 35.

Our conclusion is that the court erred in holding that there was no gift of the bond to Mrs. Rowe and that defendant was entitled to interest before judgment on the expenditures made by him. Otherwise we think the decision below was correct. Judgment is directed accordingly.

Reversed on plaintiff Rowe's appeal and affirmed on defendant's appeal with directions to enter judgment in accordance with the opinion.

