**In re ESTATE OF Peter A. LeBRUN, Deceased.**

**No. C2–90–227.**

Court of Appeals of Minnesota.

July 10, 1990.

Malcolm K. MacKenzie, MacKenzie, Gustafson, Lucas & Riley, Ltd., St. Peter, for appellant James LeBrun.

Douglas J. Dehn, Randall, Dehn & Goodrich, Anoka, for respondent Elaine LeBrun.

Raphael J. Miller, Miller & Cowell, Gaylord, for respondent Rosemary Anderson.

Patricia Ziegler, Anoka, respondent pro se.

Betty Sandeen, Nicollet, respondent pro se.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

James LeBrun appeals from a judgment of the final inventory and accounting for the estate and last will and testament of Peter A. LeBrun, his father. He also appeals an interlocutory order for family maintenance during administration of the estate. James argues that the trial court erred in awarding Elaine LeBrun, Peter's surviving spouse, family allowances under Minn.Stat. § 525.15 (1988). He also claims error in the trial court's findings that an

envelope containing $7,500 in cash found in Peter's home after his death was property of the estate and not an inter vivos gift to James; that a promissory note was subject to a joint tenancy and therefore was not estate property; and that a loan to Elaine's son by a previous marriage was not an asset of the estate. James seeks attorney fees for that portion of this appeal which may benefit the estate. We dismiss in part, affirm in part and reverse in part.

## FACTS

Peter and Elaine LeBrun were married in 1976. This was a second marriage for each of them. Peter moved into Elaine's home, bringing some of his household goods and furnishings. Peter's farm was sold by contract for deed, which remains an asset of the estate.

On October 12, 1978, Peter and Elaine executed wills and signed written consents to each other's wills. Peter's will provided that Elaine would get 20 percent of Peter's estate and his surviving children would share the remaining 80 percent. The consent Elaine signed provided:

I * * * accept the provisions [in the will] made in my behalf in lieu of my statutory rights and other rights which I may now have or may have in his estate and property, of whatsoever kind, both real and personal.

The attorney who drafted Peter's and Elaine's wills and consents testified that these documents were not intended to waive statutory allowances for maintenance and selection of property. Because it was his general procedure to do so, he believed he told Elaine that the 20 percent share of Peter's estate that she would receive under his will was considerably less than the share of his estate she would be entitled to if she did not consent, but that her consent did not waive her other statutory rights.

Peter died on September 25, 1987, survived by Elaine and his five adult children from his prior marriage. His nonprobate estate included more than $160,000 deposited in various bank accounts. There were several "pay on death" accounts payable to Elaine, two joint accounts with Elaine, and ten accounts held in trust for his children and Elaine. His probate estate was in excess of $100,000.

After Peter's death, the personal representative (one of his daughters) withdrew the monies from his joint account with Elaine. She refused to pay Elaine a spousal maintenance allowance during administration of the estate.

On April 7, 1988, Elaine filed a petition to receive spousal maintenance according to Minn.Stat. § 525.15. The trial court found that Elaine's signed consent to Peter's will did not effect a waiver of her rights to statutory maintenance. In an order filed April 18, 1989, the court ordered the estate to pay maintenance to Elaine in the amount of $500 per month during the administration of Peter's estate, or a maximum of 18 months without a court order of extension.

After Peter's death, James LeBrun called Elaine and told her of an envelope containing $7,500 in cash which was located in a filing cabinet at the home of Peter and Elaine. Elaine delivered this cash to attorney Everett Young for inclusion in the estate.

James claims that this cash was an inter vivos gift to him from Peter. He testified that Peter gave him an envelope with $10,000 in it and that he took this envelope home and kept it in the glove compartment of his car for three months before returning it to his father with permission to his father to use it as needed. The personal representative testified that shortly before Peter's death, James told her that Peter had given him a large sum of cash and that he had returned it because James thought it should belong to all the kids.

The trial court found that at all times prior to his death Peter LeBrun had control over the cash and had full right to use the cash as he saw fit. The court concluded that the cash was not a gift to James but was an asset of the estate.

On June 6, 1986, James and Diane LeBrun gave a promissory note to "Peter or Elaine LeBrun." James testified that the money loaned was derived from a certifi-

cate of deposit that Peter had in his own name. The trial court found that the promissory note issued to Peter "or" Elaine was jointly owned, with rights of survivorship, and therefore was not estate property.

Elaine testified that she made a loan to her son, Daniel Chopin, in October 1986 and that the money for the loan came from a certificate which was probably from her first husband's life insurance, but was not from any of Peter's money. The trial court found that the loan is not property of the estate.

The trial court awarded Elaine selected furniture and household goods and other personal property. This award was in addition to the 20 percent of Peter's estate to which Elaine was entitled under his will.

### ISSUES

1. Did the trial court err in awarding statutory allowances to Elaine LeBrun?

2. Did the trial court err in finding that cash found at the home of Peter and Elaine after Peter's death was an asset of the estate and not an inter vivos gift to James?

3. Did the trial court err in finding that the promissory note issued by James and Diane LeBrun to "Peter or Elaine LeBrun" was joint property, subject to rights of survivorship?

4. Did the trial court err in finding that the loan made to Daniel Chopin was made by Elaine only and is not property of Peter's estate?

### DISCUSSION

James LeBrun challenges the sufficiency of the evidence to sustain the trial court's findings of fact and whether those findings sustain the trial court's legal conclusions. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). The court of appeals shall not set aside the trial court's findings of fact unless clearly erroneous, with due regard being given to the opportunity of the trial court to judge the credibility of witnesses. Minn.R.Civ.P. 52.-01.

### I

■ Minn.Stat. § 525.15(1) and (4) provide that when a person dies, testate or intestate, the surviving spouse shall be allowed a statutory selection of "furniture and household goods" and other personal property and shall be allowed reasonable maintenance during the administration of the estate.

James argues that Elaine entered into a post-nuptial contract which barred or waived her statutory rights to family allowances.

Minn.Stat. § 524.2–204, which was enacted in 1985, provides:

The right of election of a surviving spouse and the rights of the surviving spouse to the homestead, exempt property and family allowances, or any of them, may be waived, wholly or partially, after marriage, by a written contract, agreement or waiver signed by the party waiving after fair disclosure. *Unless it provides to the contrary, a waiver of "all rights," or equivalent language, in the property or estate of a spouse is a waiver only of the right to elective share.*

(Emphasis supplied).

The legislature provided that the section applies to estates of decedents dying after December 31, 1986. 1985 Minn.Laws ch. 250, § 28. We are not persuaded by James' argument that use of the statute to construe Elaine's consent agreement, signed several years before enactment of the statute, is an impermissible retroactive application; the statute specifically requires such construction. We also note that the statute codifies long-standing rules for construing such waivers. *See Blakeman v. Blakeman*, 64 Minn. 315, 317, 67 N.W. 69, 70 (1896) (holding that when a surviving spouse elects to take under a will and accepts the will "in lieu of my statutory rights and other rights," she has not waived her right to statutory allowances which the statute expressly applied to estates where decedent died either intestate or testate).

■ The attorney who drafted the consent and the will testified that the consent was not intended to waive the statutory

family allowances. This testimony further supports the trial court's finding that the language in the consent was equivalent to a waiver of "all rights," which, according to Minn.Stat. § 524.2–204, does not constitute a waiver of maintenance and selection of property under Minn.Stat. § 525.15. This finding has support in the evidence and is not clearly erroneous.

■ James argues that the trial court erred in failing to find that a brush hook, miscellaneous tools and a rock tumbler were property of the estate which Elaine could retain as "furniture" or "household goods" selected by her under Minn.Stat. § 525.15(1).

It appears that the tools, such as the screwdriver James specifically mentions, are used incident to maintaining a home, where a set of mechanic's tools, for example, would not be. A brush hook would also appear to be used in the maintenance of a household. However, a rock tumbler, having no household function but being, rather, a mechanism for a hobbyist to polish rocks, would seem to fall outside the "household goods" category. Therefore, there was no error in allowing selection of the tools and a brush hook as "household goods," but allowing the selection of the rock tumbler was error.

Finally, James contends the trial court abused its discretion in awarding spousal maintenance to Elaine.

At the time Elaine filed her petition to receive spousal maintenance during the administration of the estate, the personal representative had withdrawn approximately $9,000 from joint accounts which were later determined to be Elaine's, and Elaine had received approximately $5,300 from the distribution of nonprobate assets. Elaine's income was $631 per month from Social Security.

■ The judge presiding at the hearing on temporary maintenance ordered the estate to pay Elaine $500 per month during the administration of the estate, but not to exceed 18 months without further court order. No appeal was taken from that order.

The estate raised issues regarding spousal maintenance before a second judge 20 months later. While the second judge determined that no further maintenance was needed based on Elaine's receipt, by then, of more than $27,000 from the estate, we find there was sufficient evidence to support the original order, which was made prior to the disbursements.

At oral argument there arose a jurisdiction issue concerning claimed errors in the trial court's interlocutory order for family maintenance. Supplemental briefs were ordered.

An order for maintenance during administration of an estate, an "allowance" governed by Minn.Stat. § 525.15, is an appealable order under Minn.Stat. § 525.71(6) (1988), which provides that an appeal may be taken from an order "making * * * an allowance for the spouse." Minn.Stat. § 525.712 (1988) provides that an appeal from a probate proceeding shall be taken within 30 days after service of notice of the order, or six months if no notice is served. The limitation of time within which an appeal from an appealable order may be taken is jurisdictional and this court cannot extend the time for appeal. *Schaust v. Town Board of Hollywood Township, Carver County*, 295 Minn. 571, 573, 204 N.W.2d 646, 648 (1973). As no appeal was taken within six months after the April 18, 1988, order for maintenance, the time within which to appeal that maintenance order expired prior to the taking of this appeal.

## II

■ The elements of a gift inter vivos are delivery of the property, "with intent to vest title in the donee, and without reserving any right to reclaim the property." *Oehler v. Falstrom*, 273 Minn. 453, 456, 142 N.W.2d 581, 585 (1966) (quoted in *Kiecker v. Estate of Kiecker*, 404 N.W.2d 881, 883 (Minn.App.1987)). The alleged donee bears the burden of proving the gift by clear and convincing evidence. *Oehler*, 273 Minn. at 457, 142 N.W.2d at 585.

The trial court found not convincing the testimony that the envelope of cash found in the decedent's home, and therefore in his

exclusive control before his death, had been a gift inter vivos to James. While the testimony could have supported a contrary order, the evaluation of testimonial evidence is a credibility determination by the trial court.

We note that James testified he returned the cash to his father to do with as he wished. "To use as he needed" was not a limitation and is inconsistent with James' claim that he retained ownership of the cash. *Cf. Larkin v. McCabe*, 211 Minn. 11, 24, 299 N.W. 649, 655 (1941).

### III

James claims that the promissory note is not in evidence and that he and his wife gave it only to Peter. The record shows that the note was marked "spouse's exhibit A" and was received into evidence without objection. The note was signed by James and his wife and was payable to "Peter or Elaine LeBrun."

In reviewing the trial court's finding that the note expressed language of joint tenancy, we are guided by the new Rule 52.01, which governs our review of the trial court's finding regarding documentary evidence:

> Findings of fact, *whether based on oral or documentary evidence*, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01 (emphasis supplied).

■ James argues that Elaine has the burden of proving that the deceased intended to give her a joint tenancy interest in the note. It appears, however, there is a presumption of joint tenancy in favor of language leading to joint ownership of personal property. For example, the names of auto owners separated by the word "or" on the vehicle's registration is evidence of joint tenancy. *Stein on Probate* § 3.02 (2nd ed. 1988). Another example is found in Minn.Stat. §§ 528.05; 528.15 (1988), which provide for presumptions that sums remaining in a joint deposit account belong to the surviving party. We believe that the estate had the burden of overcoming this presumption.

■ James claims that the nonmarital source of the loan and the deceased's control of the note proves his intent not to give his wife, Elaine, a joint tenancy interest in the note. We see no apparent error in the trial court's rejection of this argument. *Cf. Peterson v. Lake City Bank & Trust*, 181 Minn. 128, 131, 231 N.W. 794, 795 (1930) (rejecting the bank's argument that the decedent's wife must prove that her husband intended to give her a one-half interest in what they were giving for the bonds).

It appears that the decedent had made a rather careful disposition of his estate. Certain accounts were set up in trust for his children and Elaine; other accounts were joint with Elaine. She turned these items, including the note, over to the estate representative. She was not certain of the legal consequences of certain designations. James makes much of Elaine's uncertainty. We think it wise that she followed the advice of her attorney and left to the courts such legal questions.

The documentary evidence is sufficient to uphold the trial court's finding that the note is the property of Elaine, as the surviving joint tenant.

### IV

■ There is substantial evidence in the record to support the trial court's finding that the loan to Elaine's son, Daniel Chopin, is not property of the estate. Elaine testified that she loaned Daniel money which she believed she received from her deceased first husband's insurance, but which was definitely not from the decedent's funds. There is no evidence that this loan was an estate asset.

### DECISION

The time to appeal the order for family maintenance, an appealable order under Minn.Stat. § 525.71(6), expired without appeal; we dismiss that portion of James' appeal which challenges the interlocutory order.

The trial court did not err in finding that Elaine did not waive her right to family allowances under Minn.Stat. § 525.15. The court did, however, err in allowing Elaine to select a rock tumbler as "household goods;" this portion of the allowance is reversed.

There is substantial evidence to support the trial court's finding that the cash found in Peter's home after his death was not a gift inter vivos to James and that the note is the property of Elaine, not the estate.

The trial court did not err in finding that the loan to Daniel Chopin is not property of the estate.

As James has not prevailed on issues of value which would benefit the estate, this court denies his request for attorney fees under Minn.Stat. § 524.3–720 (1988).

Dismissed in part, affirmed in part and reversed in part.