### Pistole, et al. v. Lanier.

(Decided May 4, 1926.)

### Appeal from Simpson Circuit Court.

1. Reformation of Instruments—Deed Conveying Fee Simple Title in Property Purchased by Grantees to Last Survivor of Them Held Not Shown to be Result of Fraud or Undue Influence on One of Grantees so as to Justify Reformation.—Deed by which title to property purchased by grantees was conveyed to them jointly, with provision that fee simple title should go to last survivor, held not shown to be result of fraud or undue influence on one of grantees justifying reformation.

2. Joint Tenancy—Cotenants Held Liable to Nonoccupying Cotenant for Latter's Share of Net Profits Derived Before Suit for Rents and Thereafter for Share of Reasonable Rental Value of Land.—Where three people acquired small farm, with understanding that fee should go to last survivor, and profits were to be used for the maintenance of the joint home, cotenants' liability for rents to nonoccupying cotenant prior to suit therefor was one-third of net profits, which cotenants had derived from use and cultivation of land not covered by their mother's dower, and after that time for one-third of reasonable rental value of land, excluding their mother's dower up to time of her death, and thereafter for one-third of reasonable rental value of entire tract.

3. Joint Tenancy—Nonoccupying Cotenant Held Not Entitled to Lien on Land for Share of Rents and Profits.—Where cotenants acquired a small farm, with the understanding that fee should go to last survivor, and profits were to be used for maintenance of joint home, tenants' liability for rents and profits to nonoccupying cotenant was a personal obligation for which cotenant was not entitled to a lien on land to secure sums adjudged to be due.

LAURENCE B. FINN for appellants.

C. B. MOORE and JOHN S. MILLIKEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On the death of her husband, in 1908, Mrs. Lucetta Lanier went to the home of her brother, Squire Pistole, and continued to live there until his death in 1913. Her brother owned a farm of about 148 acres, of which 60 acres, upon which the house and barns were situated, were allotted as dower to his wife, Sarah Pistole. The estate was involved, and it was necessary to sell the land at decretal sale. Belle and Myrtle Pistole, two of his daughters, became the purchasers at the price of $4,-000.00. Needing about $1,775.00 to meet the sale bond, they approached their aunt, Mrs. Lanier, with the view of borrowing the money from her. Mrs. Lanier suggested that she purchase an interest in the land. Having seen her husband's and her brother's estates sold, she wanted to know if the title could not be arranged so as to avoid a sale if any of them died. G. W. Roark, a lawyer of high standing, was consulted and he advised that the arrangement could be carried out by providing in the deed that the last survivor should succeed to the land. Thereafter, Mrs. Lanier and the Misses Pistole, together with W. W. Spears and their brother, Virgil Pistole, went to Mr. Roark's office where he prepared two deeds; one conveying the land from Belle and Myrtle

Pistole to W. W. Spears, and the other conveying the land from Spears to Mrs. Lanier and the Misses Pistole. The title was conveyed to the three jointly with the provision "that the longest liver of the three shall have and own said land in fee simple." After the execution of the deeds Mrs. Lanier continued to live with Belle and Myrtle and their mother for about two years, when she went to visit a niece in Texas.

In the month of April, 1921, Mrs. Lanier brought this suit against Belle and Myrtle Pistole, their mother, Sarah Pistole, and W. W. Spears for a reformation or cancellation of the deed, and for an accounting of rents and profits. She relied on a want of knowledge of the terms of the deed, and charged a fraudulent conspiracy on the part of the defendants. She also averred that the bad treatment to which she was subjected compelled her to leave the Pistole home. After hearing the evidence the chancellor refused to reform or cancel the deed, but gave Mrs. Lanier judgment for the sum of $600.00, with interest, and adjudged her a lien on the farm to secure the same. He further adjudged that the defendants, Belle and Myrtle Pistole, should pay to Mrs. Lanier the sum of $120.00 a year, payable in semi-annual installments of $60.00 each, beginning July 1, 1924, and continuing during the remainder of her natural life. By a supplemental judgment he directed that the land be sold to pay the $600.00, interest and costs. Belle and Myrtle Pistole have appealed, and appellee has prosecuted a cross-appeal.

The cross-appeal challenges the propriety of the chancellor's action in refusing to reform or cancel the deed. We have carefully considered the evidence bearing on the question. It not only fails to disclose that any fraud or undue influence was practiced on appellee, but leaves no doubt that she herself, in order to avoid the expense of a sale in case of death, suggested that the fee simple title should go to the last survivor, and that the deed was drawn in accordance with this suggestion and its provisions fully explained to her before its execution. We are, therefore of the opinion that the chancellor correctly ruled that there was no ground for reforming or cancelling the deed.

The only question left for decision is the correctness of the judgment as to rents. We need not enter into a general discussion of a nonoccupying tenant's right to

rents against his cotenants in possession. The case is one where three women, one 77 years of age, and the other two between 40 and 50 years of age, desired to pool their capital and acquire a small farm on which they could live together for the remainder of their lives with the understanding that the fee should go to the last survivor. It was contemplated that the profits should be used for the maintenance of the joint home, and the comfort and support of all the owners. The state of the title was such that no legal partition could be had. After occupying the premises with her nieces for about two years appellee went to Texas. The evidence does not support the charge of mistreatment, but shows that she was treated with great kindness and consideration by her nieces, was on cordial terms with them when she left for Texas and that her action was purely voluntary. There was nothing in her conduct to justify the inference that she was leaving for good, and she never informed her nieces that she intended to hold them liable for rent. Naturally, they were not skilled in husbandry, and to hold them to the strict liability of regular tenants without their consent and without notice of any such intention on the part of appellee would be manifestly unjust. In view of the peculiar circumstances thus presented we are constrained to hold that the measure of their liability prior to the filing of the suit is one-third of the net profits which they actually derived from the use and cultivation of the land not covered by their mother's dower. Nelson's Heirs v. Clay's Heirs, 7 J. J. Marsh. 139, 23 Am. Dec. 387. After that time they are liable for one-third of the reasonable rental value of the land, excluding their mother's dower up to the time of her death, and from and after their mother's death to one-third of the reasonable rental value of the entire tract. Hixon v. Bridges, 38 S. W. 1046. As the case was not tried on this theory and the proof was not directed to these issues, the ends of justice require that the parties be given an opportunity to take additional proof.

It is proper to add that the liability of appellants for rents and profits is simply a personal obligation, and that appellee is not entitled to a lien on the land to secure the sums adjudged to be due. Burch, etc. v. Burch, etc., 82 Ky. 622.

Wherefore, the judgment is affirmed on the cross-appeal and reversed on the original appeal, and cause remanded for proceedings consistent with this opinion.