CAMPBELL *v.* SELIG.

4-9015                                              225 S. W. 2d 340

Opinion delivered December 19, 1949.

Rehearing denied January 16, 1950.

*Linwood L. Brickhouse* and *D. K. Hawthorne,* for appellant.

*Meehan & Segraves* and *M. F. Elms,* for appellee.

DUNAWAY, J. In the first appeal of this cause it was held that appellant Campbell and appellee Selig were tenants in common in the ownership of certain filling station property in the City of Stuttgart, Arkansas. The cause was remanded with directions to state the account between them. See *Campbell* v. *Selig,* 212 Ark. 168, 205 S. W. 2d 848. As stated there in the opinion by Mr. Justice FRANK G. SMITH: ''The transactions between the present parties were numerous, intricate and confusing.''

On this second appeal only the facts necessary to an understanding of the issues now to be decided will be stated. The real property in question was acquired sometime prior to the execution of a written agreement between Campbell and Selig on April 15, 1930. At that time the property was mortgaged, title was in Selig, and an additional $3,000 was required from Campbell for his interest to equal that of Selig. In addition to the $3,000 required by Campbell for the filling station property, he was also in need of $3,500 in connection with some rice-farming operations in which he was engaged. To obtain the necessary funds a $6,500 loan was made at The People's National Bank of Stuttgart, which loan was secured by a deed to the bank of a one-half interest in the filling station property and a chattel mortgage on Campbell's rice crop. In accordance with the agreement already referred to, $3,000 was deposited in the filling station bank account. This was ultimately used toward payment of the prior mortgage on the Campbell-Selig property. After re-paying only $500 of the $6,500 loan, Campbell left Stuttgart, and was not heard from again in connection with the property in question until he filed this suit for an accounting in 1944. Without detailing the financial transactions by which Selig paid off the indebtedness against the filling station property, including the $6,000 obligation of Campbell, it is sufficient to state that by 1941 this had been accomplished and Selig held legal title to the property.

In 1944 a complete audit of the account of the Home Filling Station on the books of The People's National Bank, from April 15, 1930, to August 22, 1944, was made by Hennegin, Croft & Company, accountants. This audit reflected that on April 15, 1930, the date of the agreement between Campbell and Selig, there was a balance of $1,424 in this account.

On remand of this cause after the first appeal, a Master was appointed to state the account between Campbell and Selig. The manner in which he arrived at the amount due from Campbell to Selig is stated in the Master's Report: "In arriving at my conclusions, I

have used figures provided in the audit report of Hennegin, Croft & Company for the period April 15, 1930, to August 22, 1944, without further verification. All transactions from August 23, 1944, to May 31, 1948, have been reviewed by me and all items of consequence have been verified by reference to supporting documents.''

Exceptions to the report were filed by both parties, and Selig filed an amended answer and cross-complaint in which he claimed he was due an additional credit for the $1,424 item above mentioned, as a loan by him to the business from his personal funds. He also claimed a reasonable compensation for his services through the years in attending to the property during Campbell's extended quiescence. Campbell claimed that the $1,424 belonged to the business just as the real property did, and denied that Selig was entitled to any compensation for his personal services.

At the trial the parties agreed that certain corrections should be made in the final account as reported by the Master. Judgment was entered for the agreed balance in favor of Selig, as shown by the corrected report, in the sum of $3,102.19 with interest at six per cent from October 1, 1948, the date to which said report covered. The court also found for Selig on the issues raised by his cross-complaint.

It is the allowance of these two additional items by the chancellor of which appellant complains: (1) The sum of $1,424 together with one-half the interest thereon at five per cent compounded from April 15, 1930, to October 1, 1948. (2) The sum of $2,800, which was charged as Campbell's share of a reasonable compensation allowable to Selig for managing the property since April 15, 1930.

As to the $1,424 item we do not think that the chancellor's finding that this money belonged to Selig personally and was advanced by him as a loan to the partnership was against the preponderance of the evidence. Selig testified that he had personally borrowed this money and deposited it in the filling station account, because the rents from the property were not sufficient

to meet the obligations of the business. Campbell did not testify at the trial of this issue.

That interest may properly be charged on a loan to a partnership by one of the parties was decided in *Phelps* v. *Davis,* 173 Ark. 108, 291 S. W. 995. Mr. Justice McHaney there said at page 111: "We therefore adopt the rule that a partnership may be liable for interest to a partner who makes advances to or for the account of the firm, where there is a special contract to that effect, or where, from the facts and circumstances surrounding the case, it may reasonably be implied that the firm was to pay interest for the advances." Here Campbell departed, leaving Selig to handle the financing and refinancing of their mortgaged property as best he could. Campbell certainly understood that interest would have to be paid on borrowed money. In these circumstances, the reasonable implication was that the partnership was to pay interest on the loan from Selig, just as on other loans. It was further held in the *Phelps* case that interest at six per cent per annum is the proper charge.

Therefore, the proper allowance to Selig as to this item is $1,424, plus one-half the simple interest thereon at six per cent per annum from April 15, 1930, to October 1, 1948, together with interest on this total amount from October 1, 1948, at six per cent per annum.

We hold, however, that the chancellor erred in allowing Selig compensation for his services in caring for the property. The general rule is that a tenant in common is not entitled to compensation for services rendered in the care and management of the common property in the absence of an agreement or understanding to that effect. *Keithline* v. *Keithline,* 106 Colo. 400, 105 P. 2d 1086; *Larkin* v. *McCabe,* 211 Minn. 11, 299 N. W. 649; *Von Herberg* v. *Von Herberg,* 6 Wash. 2d 100, 106 P. 2d 737; *Lake* v. *Perry,* 99 Miss. 347, 54 So. 945; *Staples* v. *Pearson,* 230 Ala. 62, 159 So. 488, 98 A. L. R. 852.

In *Dunavant* v. *Fields,* 68 Ark. 534, 60 S. W. 420, where a tenant in common sought to recover for improvements made in clearing the common lands, we said at page 543: "In the case at bar, the plaintiff was al-

334

lowed for his outlay of money in making improvements, but he was not allowed for his personal services, which he insists should be paid him.   *   *   *   the law would not permit him to go further than to seek reimbursement for money actually paid out on the improvements, in the absence of a contract authorizing him to make them." There is no evidence whatever in the instant case that Campbell agreed to compensate Selig for his managerial services.

The decree appealed from is affirmed in part, reversed in part, and the cause remanded with directions to enter judgment in accordance with this opinion.