5-1924 329 S. W. 2d 416

Opinion delivered December 7, 1959.

*James L. Sloan,* for appellant.

*Lloyd B. McCain,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal is a
further phase of litigation dealt with by this Court in
*Lawrence v. Lawrence,* 225 Ark. 500, 283 S. W. 2d 697.
Josiah W. Lawrence, who was the owner of the realty
here in question, died on November 28, 1946, leaving as
his survivors a widow, Annie Lawrence, and two sons,
Jay D. Lawrence, appellant herein, and Charles D. Law-
rence. Charles D. Lawrence died testate on January
25, 1950, leaving as his sole survivor, his widow, Vivian
H. Lawrence, appellee herein. On May 9, 1950, the
mother, Annie Lawrence, conveyed the realty involved
herein to her son Jay, by warranty deed. On April 15,

1952, Mrs. Lawrence died. In the earlier appeal, this Court held that the will of Josiah W. Lawrence devised the realty in trust to Annie Lawrence for life for the benefit of herself and two sons, and that the remainder in fee was vested in the sons, Jay D. Lawrence and Charles D. Lawrence.[1] The interest of Charles D. Lawrence passed under his will to Vivian. Accordingly, appellant and appellee were the owners of an equal undivided interest in the realty as tenants in common.

Pursuant to the deed from his mother on May 9, 1950, Jay Lawrence took possession of the realty, managed it, collected rentals, made improvements, and paid the taxes and insurance premiums, both before and after the death of his mother. All of the property involved is located in McGehee, Desha County, and is described as follows:

Lot 7, Block 9, Addition "A", McGehee, Desha County, Arkansas, (designated by the Chancellor as House No. 1).

Lot 8, Block 9, Addition "A", McGehee, Desha County, Arkansas, (designated by the Chancellor as House No. 2).

Lot 4, Block 8, Maulding's Addition, McGehee, Desha County, Arkansas, (designated by the Chancellor as House No. 3).

In *Lawrence* v. *Lawrence, supra,* this Court remanded the case for further proceedings, and the Chancery Court, after hearing further evidence, ordered partition and accounting between the parties as follows:

"That the claim of Jay Lawrence for repairs on the property involved during the lifetime of Mrs. Annie Lawrence shall be denied. * * * there is hereby a partition in kind of Lot 7 and 8 in Block 9 of Addition 'A' to the City of McGehee, Desha County, Arkansas, as follows:

(1) Lot 8 in Block 9 of Addition 'A' to the City of McGehee, Desha County, Arkansas, is hereby parti-

---

[1] This holding reversed the trial court, which held that Annie Lawrence had taken a fee simple title under the will of her late husband.

tioned to the defendant, Jay D. Lawrence, together with all the improvements thereon and the furnishings thereof.

(2) Said Lot 7 of Block 9 of Addition 'A' to the City of McGehee, Desha County, Arkansas, together with the improvements thereon and the furnishings thereof, is hereby partitioned to the plaintiff, Vivian H. Lawrence.

\* \* \* Lot 4 in Block 8 of Maulding's Addition to the City of McGehee, Desha County, Arkansas, together with the improvements thereon and the furnishings therein is not susceptible to partition in kind and that the same should be sold and the proceeds of said sale to be divided equally between the plaintiff, Vivian H. Lawrence and the defendant, Jay D. Lawrence.

\* \* \* that the defendant, Jay D. Lawrence, be and he is hereby ordered to account for the rentals collected from all of these properties from September 1, 1957, including the rental of Lot 8 (House No. 1) occupied by the defendant, which rental on said Lot 8 shall be at the rate of $55.00 per month, and to pay one-half ($\frac{1}{2}$) of the net rental into the registry of this Court for the use and benefit of Vivian H. Lawrence. It is further ordered, adjudged and decreed that the plaintiff, Vivian H. Lawrence, is indebted to the defendant, Jay D. Lawrence, in the sum of $1,059.80 for which defendant shall have judgment against the plaintiff to be paid out of the funds accruing to said plaintiff from the sale of Lot 4 in Block 9 (8) of Maulding's Addition to the City of McGehee and her one-half of the said rentals accruing from all said properties from September 1, 1957, to date, heretofore ordered paid into the registry of this Court for the benefit of said Vivian H. Lawrence.''

From such decree, appellant brings this appeal.

For reversal of the decree, appellant relies upon the following points:

''I.

The Chancery Court Erred in Disallowing the Appellant's Claim for Improvements Made By Him While Holding the Realty As A Life Tenant.

## II.

If the Appellant is Not Entitled to an Allowance for Services Rendered in Managing the Realty, Then The Appellee is Not Entitled to an Allowance for Use and Occupation of the Realty by Appellant.

## III.

The Rule Concerning Betterments Applies to Improvements Made By the Appellant While Holding the Realty As A Tenant In Common With The Appellee."

## I.

An examination of Exhibit 231 reflects that improvements of $2,042.68 were placed on house No. 1 by appellant between the time he received the deed from his mother and the time of her death. Exhibit 231 reflects no improvements on houses No. 2 and No. 3 during the same period.[2] House No. 1 was awarded to Jay Lawrence by the decree, which resulted in appellant getting the entire benefit of the improvements to that particular property. At any rate, we consider appellant's contention to be without merit. As found by the trial court, Jay D. Lawrence, after obtaining the interest of his mother, held as a life tenant (for the life of Mrs. Annie Lawrence), and not as a tenant in common with appellee. From the court's opinion:

"He is not entitled to recover for the repairs and improvements as against the fee remainder or reversionary interest. *Smith & Shoptaw* v. *Stranton,* 187 Ark. 447. In the accounting repairs are claimed but no rents accounted for. This is hardly consistent. The life tenant gets the rents but stands for the repairs. Tenants in common share the rent as well as the repairs. This claim for repairs during the lifetime of Mrs. Annie Lawrence is denied."

In *Smith & Shoptaw* v. *Stranton, supra,* we said:

---

[2] This fact was not specifically mentioned in the Chancellor's opinion, but was evidently considered in making the order of partition.

"It is the general rule that a life tenant may not recover from the reversioner for improvements made by the former and consequently no charge for the same can be made upon the inheritance. To this general rule exceptions may, and do, arise, where to apply it would be contrary to good conscience and fair dealing.''

Such exceptions are cited in the *Restatement of the Law of Property,* Volume I, Section 127, page 404. The Chancellor apparently found that this case did not come within any exception to the general rule, with which finding we agree. Appellant relies on *Weatherly* v. *Purcell,* 217 Ark. 908, 234 S. W. 2d 32, but there, the facts were decidedly different. From the opinion in that case:

"The evidence in the present case indicates without question that up until 1946 everyone who had anything to do with the land assumed that the 1889 deed conveyed a fee simple title to John E. Purcell. John E. Purcell executed a deed in 1930 purporting to convey a fee simple to Weatherly. That gave Weatherly 'color of title' within the meaning of the Betterments Act. * * * It is not necessary now to review all the evidence introduced; it suffices to say that when Weatherly made the improvements upon the land for which he now seeks reimbursement, he had no idea that he owned only an estate *pur autre vie* while John E. Purcell lived. He peaceably improved the land while in possession under color of title believing himself to be the owner in fee simple.''

It would certainly appear that Weatherly, who was undisturbed in his claim to the property for that period of time, and claiming under one whose apparent ownership had been recognized by "everyone who had anything to do with the land", was justified in believing himself to be the owner.

## II.

Appellant more or less concedes that under our holding in *Campbell* v. *Selig,* 216 Ark. 330, 225 S. W. 2d 340, he is not entitled to an allowance for services rendered in caring for the property; appellant states:

"However, if the appellant is required to forego valuable services, it is no more than equity, * * * to apply the rule of *Cannon* v. *Stevens,* 88 Ark. 610, to the effect that a tenant in common in possession of the common land is not liable to a co-tenant for rent unless there has been an actual ouster of the co-tenant or a promise to pay rent for use and occupation."

We have held that since each tenant in common has the right to occupy the premises, neither can exclude the other, and a tenant in possession who does not exclude his co-tenant is not liable for rent. *Hamby* v. *Wall,* 48 Ark. 135, 25 S. W. 705. Here we deem the evidence sufficient to establish exclusion from the premises. In fact, the original suit was based on the contention by appellant that he was the sole owner of all the property here involved. He took complete charge of the realty, paying all the taxes, renting and collecting rentals, authorizing and making whatever improvements and repairs he deemed necessary, all without consultation with, authority from, or accounting to, his co-tenant. Under the record before us, it is obvious that appellant's acts were entirely consistent with the acts of one who is exercising exclusive ownership over property, and entirely inconsistent with the acts of one who is only managing for the benefit of somebody else. We find no merit in this contention.

### III.

Section 34-1423, Ark. Stats. (1947) Anno., provides as follows:

"If any person, believing himself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as aforesaid and the amount of all taxes which may have been paid on said land by such person, and those under whom he claims, shall be paid by the successful party to such occupant, or the person under whom or from whom he entered and holds, before the court rendering judgment

in such proceedings shall cause possession to be delivered to such successful party.''

This is commonly known as the Betterments Act. The trial court found, and appellee argues, that this was an action for an accounting and partition between tenants in common, and the Betterments Statute had no application. The court applied the rule found in 4 Pomeroy's Equity Jurisprudence 712, Section 1240.[3] A discussion of this question is unnecessary, since we are clearly of the opinion that, even if the rule of figuring betterments as such under the statute applies, appellant is not entitled to relief under the plain provisions of that statute. It will be noted that the statute provides ''peaceably improved''. Even the evidence on behalf of appellant reflects that most of the improvements were made after appellant had notice that appellee was claiming half interest in the property. Improvements made with the knowledge that another is claiming an interest in the property can hardly be characterized as improvements made under a *bona fide* belief of ownership, as required by the statute. While not controlling, it might also be noted here that appellant's explanation relative to the reason for his mother deeding him the property in 1950, is rather vague and indefinite. Some of the questions propounded on cross-examination were obviously based on the theory that the deed had been given solely as an attempt to strengthen appellant's position against the impending claim of appellee, and appellant's answers were hardly sufficient to dispel any suspicion that this might be true. According to his testimony, the mother

---

[3] "Where two or more persons are joint purchasers or owners of real or other property, and one of them, acting in good faith and for the joint benefit, makes repairs or improvements upon the property which are permanent, and add a permanent value to the entire estate, equity may not only give him a claim for contribution against the other joint owners, with respect to their proportionate shares of the amount thus expended, but may also create a lien as security for such demand upon the undivided shares of the other proprietors.

[In many jurisdictions it is held that a tenant has no lien as against his cotenant in respect of his share of rents or profits received by the cotenant. On the other hand, as between the parties themselves, it is frequently held that the court in partition proceedings will hold that one tenant is entitled to a lien against the interest of his cotenant for rents and profits received by such cotenant which equitably belong to the tenant.]"

"had done a lot more for C. D. Lawrence than she ever did for Jay D. Lawrence", and appellant stated that she had always wanted him to have the property. There was also an obscure reference to litigation arising out of a loan made by Mrs. Annie Lawrence to Charles and appellee "* * * I also know that before — er about the time that my mother gave me a deed to this property there was some other litigation in — er my brother had died — it was a store building involved that she loaned them $12,000.00 to build and at the time they didn't — at the time of his death the building came back to mother * * *."

The special chancellor wrote a very exhaustive opinion, and evidently gave this case considerable study and close attention. He prepared a compact summary of the three properties, showing the value of the houses, improvements and repairs, taxes, insurance, rents, and a comparative showing of values of the properties before and after repairs and improvements. It is apparent from his opinion that he considered appellant was not acting in good faith in making the improvements and was endeavoring to "improve" the co-tenant out of her interest in the property. He found "from the evidence that the amount spent and the nature of the improvements in connection with remodeling, repairing and improving House No. 1 is out of proportion in value and nature to what the court can equitably permit a tenant in common to expend and charge the other tenants with part payment thereof, if there be any equitable way around it." The court then proceeded to partition the property in a manner which, we have concluded, under the record before us, was equitable and just to each co-tenant.[4]

---

[4] "This court finds and holds that partition in kind as to House No. 1 and No. 2 and sale of House No. 3, may be equitably and justly done in this manner:

Partition House No. 1 to Jay D. Lawrence, defendant, he to absorb the costs of remodeling, repairing, improving, and refurnishing same, including taxes in the sum of $218.70 and the insurance during the period.

Partition House No. 2 to Vivian Lawrence, plaintiff, she to reimburse Jay D. Lawrence for the entire bill for remodeling, repairing, improving and refurnishing House No. 2 in the sum of $3,971.27, in-

## Finding no error, the decree is affirmed.

cluding the insurance in the sum of $336.78 and the taxes during those years. Since the taxes on House No. 1 and No. 2 were paid on one call, a total of $437.40, Vivian Lawrence will reimburse Jay D. Lawrence for one-half that amount in the sum of $218.70, making the total reimbursement on this item of $4,526.75. As to the disparity in value between House No. 1 and House No. 2, it will be noted that the value of the properties, less the repairs and improvements, House No. 2 is valued at $4,628.73, and House No. 1 at $2,841.55, showing inferentially that the difference in value between the properties, if there be a difference, was largely made or occasioned by reason of the expenditures of Jay D. Lawrence.

On House No. 3, Jay D. Lawrence expended for repairs and improvements $2,854.15, taxes $198.90, and insurance $95.91, a total of $3,148.96. Vivian Lawrence owes Jay D. Lawrence one-half of this amount in the sum of $1,574.48. When this sum ($1,574.48) is added to the sum ($4,526.75) owing on House No. 2, there results the sum of $6,101.23 owing by Vivian Lawrence to Jay D. Lawrence.

The rents for which Jay D. Lawrence should account, figuring House No. 1 at the same rental as House No. 3, during the period of accounting, amounts to the sum of $2,964.50, plus $5,345.01, plus $2,-964.50, a total of $11,274.01. Jay D. Lawrence is responsible to Vivian Lawrence for one-half of this sum of $5,637.01. Deduct this sum from the $6,101.23, leaves Vivian Lawrence indebted to Jay D. Lawrence in the sum of $464.22, to be answered for in sale of House No. 3.

This leaves House No. 3 to plaintiff and defendants as tenants in common, and it is found that this house should be sold to the highest bidder for partition and the clerk of this court named as commissioner to make sale and accounting thereof."