**AMERICAN STANDARD LIFE AND ACCIDENT INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Charles J. SPEROS, Defendant,**

**Ralph W. Thomas and Gateway Chevrolet, Inc., Defendants and Appellants.**

**Civ. No. 920240.**

Supreme Court of North Dakota.

Jan. 6, 1993.

Patrick B. Kenney of Miller, Norman & Kenney, Moorhead, MN, for plaintiff and appellee.

Steven A. Johnson (argued), and H. Patrick Weir of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellants.

VANDE WALLE, Justice.

Ralph W. Thomas and Gateway Chevrolet, Inc. appealed from a district court judgment which granted American Standard Life & Accident Insurance Company's [American Standard] motion for summary judgment. The judgment ordered that American Standard, the garnishor, recover from Gateway Chevrolet, Inc. [Gateway], the garnishee, $138,443.90, plus interest and costs as the result of an Arizona judgment against defendant Thomas, an employee and major shareholder of Gateway. We affirm.

American Standard obtained a judgment against Thomas on October 2, 1991, in Maricopa County, Arizona. The judgment arose from an agreement in which Thomas guaranteed a loan extended by American Standard. The guarantee agreement specified it was to be governed by Arizona law. After the loan was in default, American Standard commenced a proceeding in Arizona to sell the real estate which secured the loan. The real estate was sold but the proceeds did not satisfy the claim, and American Standard successfully sued Thomas for the deficiency. Under Arizona law, the judgment against Thomas for the deficiency was limited to his "sole and separate property."

An authenticated copy of that judgment was filed in Cass County, North Dakota, on January 14, 1992, pursuant to Chapter 28–20.1, NDCC, North Dakota's codification of the Uniform Enforcement of Foreign Judgments Act. Since then, several garnishee summons have been served, most notably against Gateway. The bases for the garnishee summons upon Gateway are that it pays Thomas a monthly salary and pays a rental on land which is leased from Thomas and owned in joint tenancy by Thomas and his wife.

After initially denying holding any money that was the "sole and separate property" of Thomas, Gateway made two garnishment disclosures, and the deposition of Bruce A. Nelson, Office Manager of Gateway, was taken. The disclosures and deposition revealed that Thomas's monthly salary from Gateway was $5,149.00. They also revealed that Gateway entered into a written lease with Thomas, individually, whereby Gateway pays him, individually, $26,500.00 per month for property in Cass County which is owned in joint tenancy by Thomas and his wife. Although acknowledging service of the Garnishment Summons, Gateway has continued to issue salary and lease checks to Thomas and has neither applied nor set off any monthly salary payments or lease payments to Thomas against the amount claimed in American Standard's garnishee summons.

Because of Gateway's failure to apply or set off any money owed to Thomas, American Standard brought a motion for summary judgment for the entire amount claimed in the garnishee summons. *See* NDCC § 32–09.1–15. The district court granted the motion. The issue before us on appeal is whether North Dakota or Arizona law applies to the wages and lease payments received by Thomas as a result of the Arizona judgment transferred to North Dakota through Chapter 28–20.1, NDCC.

In 1969, North Dakota adopted the 1964 Revised Act of the Uniform Enforcement of Foreign Judgments Act as approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association. Chapter 28–20.1 provides a summary procedure for actions on foreign judgments by providing the enacting state with a speedy and economical method

of doing what it is required to do by the Constitution of the United States, that is, to provide full faith and credit to the judgments of courts of other states. NDCC §§ 28–20.1 *et seq.; Unif. Enforcement of Foreign Judgments Act (1964)* Prefatory Note, 13 U.L.A. 150 (1986).

■ The Full Faith and Credit Clause of the United States Constitution asserts:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws proscribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

*U.S. Const.* art. IV, § 1. In applying the Uniform Enforcement of Foreign Judgments Act, constitutional full faith and credit is afforded to foreign judgments even though a similar judgment could not be obtained in the forum state as a matter of law, *Matson v. Matson,* 333 N.W.2d 862 (Minn.1983)[1], or though the judgment could not be obtained in the forum state as a matter of strong public policy. *Hamilton v. SCM Corp.,* 334 N.W.2d 688 (Wis.Ct. App.1983); *Medina & Medina, Inc. v. Gurrentz Int'l,* 304 Pa.Super. 76, 450 A.2d 108 (1982).

■ When a properly authenticated foreign judgment is filed with the clerk of any district or county court in North Dakota and notice is properly given to all parties, *Beck v. Smith,* 296 N.W.2d 886 (N.D.1980), the clerk treats the foreign judgment in the same manner as a judgment of a district or county court of this state. NDCC § 28–20.1–02. "A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court or county court of any county of this state and may be enforced or satisfied in like manner." *Id.* The local law of the forum determines the

methods by which a judgment of another state is enforced. *United Bank of Skyline v. Fales,* 395 N.W.2d 131, 133 (Minn.Ct. App.1986) *citing Jones v. Roach,* 118 Ariz. 146, 150, 575 P.2d 345, 349 (Ct.App.1977) ["[P]rocedurally a foreign judgment is subject to the same procedure as a *final* judgment of this state."]; *First of Denver Mortg. Investors v. Riggs,* 692 P.2d 1358 (Okla.1984); *Restatement (Second) Conflicts of Laws* § 99 (1969).

■ Appellants contend that, because American Standard and Thomas agreed that the guarantee be construed according to the laws of Arizona, Arizona law should be applied to the enforcement of the judgment in North Dakota. Matters of procedure and remedial rights are governed by the law of the forum where relief is sought. *Dixon's Extrs. v. Ramsay's Extrs.,* 7 U.S. (3 Cranch.) 319, 2 L.Ed. 453 (1805). Thus the remedies and procedures to enforce a contract made in another state are the remedies and procedures of the enforcing state. The same reasons to look to the intent of the parties in the case of the substance of the contract do not apply in the case of matters pertaining to the remedy, as the parties presumably do not necessarily consider the remedy when they enter into the contract. They bind themselves to do what the law they live under requires, but since they bind themselves generally, it is as if they had contemplated the possibility of enforcement in another jurisdiction. While the obligation of a contract is always protected by the state and federal constitutions, that which is purely a matter of process or remedy is governed and regulated by the laws of the place where the remedy is sought. The inhibition of the constitution will not be held to apply where there is a change in the form of the remedy, or a modification of it, provided no substantial right secured by the

---

**1.** Pursuant to section 1–02–13, NDCC, we freely cite to other jurisdictions which have adopted, and whose courts are applying, the 1964 revision of the Uniform Enforcement of Foreign Judgments Act. This section states: "Any provision in this code which is a part of a uniform statute must be so construed as to effectuate its

general purpose to make uniform the law of those states which enact it." NDCC § 1–02–13. Conversely, appellant's arguments stemming from the heavy reliance upon California cases will be given minimal weight as that jurisdiction has not adopted the Act.

contract is thereby impaired. 16 Am. Jur.2d *Conflicts of Laws* § 118 (1979).

Although we are bound to give full faith and credit to the substance of foreign state judgments, procedure and remedies are different from substance; and what is procedure and what is substance is determined by the forum. *Anderson v. State Farm Mut. Auto. Ins. Co.*, 222 Minn. 428, 24 N.W.2d 836 (1946). The substance of the contract has already been determined by the Arizona court. The only inquiry we make is how to enforce it, and for this we rely upon North Dakota law.

Here, applying Arizona law which the parties agreed controlled the guarantee agreement, the Arizona court held that American Standard recover from Thomas as to his sole and separate property, a fixed sum plus costs and interest. Relying upon North Dakota law for the methods and procedure of enforcement of its judgment, American Standard initiated garnishment proceedings against Thomas and Gateway to execute upon two sources of income— Thomas's salary and Thomas's rental income. North Dakota law therefore governs the enforcement of the Arizona order in North Dakota.

Chapter 32–09.1, NDCC, provides a method by which a judgment creditor may proceed by garnishing property, real or personal, belonging to the creditor's debtor which would satisfy the judgment creditor's claim. NDCC § 32–09.1–02. A garnishment action is the exclusive procedure which may be used to execute on earnings of a debtor while those earnings are held by a third party employer. *Id.* We have long held that fundamental in any garnishment procedure, only the actual interest of the defendant can be reached by garnishment proceedings, and the creditor cannot

obtain any more than actually belongs to the debtor:

"The rights of the debtor are the source of the creditor's rights. The stream cannot rise higher than its source. . . . Under no circumstances can the plaintiff be placed in a more favorable, or the garnishee in a worse, position than if the defendant was himself enforcing his claim. For the plaintiff cannot, by garnishment, place himself in a superior position, as regards a recovery, than is occupied by the principal defendant."

*Hatcher v. Plumley*, 38 N.D. 147, 164 N.W. 698, 700 (1917) [citations omitted]. The procedural law of North Dakota in enforcing a valid judgment by garnishment thereby allows the garnishor to reach only the property in which the defendant has an interest, and only to the extent of that interest. *See* NDCC § 32–09.1–03. The crux of the matter in this case is whether Arizona or North Dakota law applies in delineating the extent of the interest which Thomas holds and which American Standard may garnish.

*Thomas's Wage Income from Gateway*

Arizona is a community property state.[2] The wages Thomas receives from Gateway are personal property acquired during the marriage and are community property and therefore not his "sole and separate property" under Arizona law. A.R.S. § 25–211. Applying Arizona law, the wages would not be subject to the present garnishment actions.

North Dakota is not a community property state. *Rozan v. Rozan*, 129 N.W.2d 694 (N.D.1964); *Matter of Estate of Erickson*, 368 N.W.2d 525 (N.D.1985).[3] Wages and salaries are one's sole and separate personal property,[4] and wages are subject to garnishment actions.

**2.** Section 25–211, A.R.S., states: "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife."

**3.** Section 14–07–04, NDCC, negates community property principles in domestic relations by stating, *"Separate property—Rights and privileges.* Except as otherwise provided by section

14–07–03, neither the husband nor the wife has any interest in the property of the other, but neither can be excluded from the other's dwelling."

**4.** Section 1–01–49(4), NDCC, states, " 'Personal property' includes money, goods, chattels, things in action, and evidences of debt," and section 47–01–07, NDCC, states, " 'Personal prop-

Arguably, North Dakota law allows foreign laws to reach a party's personal property located within North Dakota by stating that "[i]f there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner and is governed by the law of his domicile."[5] NDCC § 47–07–01. The source note of section 47–07–01, NDCC, incorrectly states it was derived from section 946 of the California Civil Code,[6] which in turn was derived from the Field Code.[7] This section of the Field Code was enacted by the Dakota Territory Legislature in 1865 (Civ.C.1865, § 364). It was subsequently adopted by the North Dakota Legislature where it has undergone only minor changes.[8]

For the purposes of historical reference and to aid in interpretation, the provisions of the modern Century Code are to be considered as continuations of previously existing sections if the two are substantially similar. NDCC § 1–02–25. Section 47–07–01 is substantially similar to section 364 of the 1865 Dakota Civil Code, which in turn is substantially similar to California's adaptation of the Field Code. In construing statutes, we may look to its legislative history and former statutory provision, including laws upon the same or similar subjects. NDCC § 1–02–39; *Furlong Ent. v. Sun Exploration & Prod.*, 423 N.W.2d 130 (N.D.1988). Therefore, we look to California case law and interpretation of section 946, Cal.Civ.Code, for guidance in interpreting section 47–07–01, NDCC.

Foreign case law interpreting statutes is most persuasive if the cases were decided prior to our own adoption of the statute.

Although we find no relevant case law interpreting the Field Code provision, prior to North Dakota's adoption of it, we find relevant interpretations after our enactment; and although not mandatory, California's interpretation of it is somewhat persuasive. *E.g.*, *Estate of Zins by Kelsch v. Zins*, 420 N.W.2d 729 (N.D.1988).

In *In re Lathrop's Estate*, 165 Cal. 243, 131 P. 752 (1913), the California Supreme Court stated that section 946, Cal.Civ.Code, is part of the "jus gentium" [law of nations] and that it announces the clearly established rule arising out of consideration of justice and the principle of comity that the law controlling personal property is governed by the law of the domicile of the owner. But this declaration is accompanied by the all-important limitation that the law of the domicile controls "if there is no law to the contrary in the place where the personal property is situated." *Id.* 131 P. at 754. This limitation of the otherwise universal rule applies when the disposition of the property does violence to the law of the place where the property is located, or where it is contrary to public policy.

The "exception to the rule" was expounded upon in *In re Nolan's Estate*, 135 Cal. App.2d 16, 286 P.2d 899 (1955), wherein the court stated that section 946, Cal.Civ.Code, was not merely a maxim of law, but a part of the conflict of laws. It held that "[t]he obvious meaning of the statute is that personal property is governed by the law of the domicile of its owner, *unless a general or specific law* where the property is situated provides that the law of the domicile shall not govern." *Id.* 286 P.2d at 901

---

erty' shall mean and include every kind of property that is not real."

**5.** Apparently the domicile of Thomas may have been Texas, but Texas, like Arizona, is a community property state. *See* Tex.Fam.Code Ann. § 5.01(b) ["Community property consists of the property, other than separate property, acquired by either spouse during marriage."].

**6.** The source note of section 47–07–01, NDCC, cites as its derivation section 946 of the California Civil Code, which reads:

"If there is no law to the contrary, in the place where personal property is situated, it is

deemed to follow the person of its owner, and is governed by the law of his domicile."

**7.** The source notes of the North Dakota Century Code incorrectly cite to the Territorial Civil Code of 1877 as the earliest source of Dakota Territory's Field Code. However, Dakota Territory enacted the Field Code in December of 1865. Laws of Dakota Territory, §§ 1–2034. *See Furlong Ent. v. Sun Exploration & Prod.*, 423 N.W.2d 130, n. 15 (N.D.1988).

**8.** R.C. 1895, § 3465; R.C. 1899, § 3465; R.C. 1905, § 4901; C.L. 1913, § 5444; R.C. 1943, § 47–0701.

*citing In re Barton's Estate,* 196 Cal. 508, 238 P. 681, 683 (1925).

In *Waite v. Waite,* 6 Cal.3d 461, 99 Cal. Rptr. 325, 492 P.2d 13 (1972), the defendant worked in California where he earned retirement benefits. He later became a resident of Nevada, and sued for divorce in Nevada. Subsequently the plaintiff sued for divorce in California, and the California Supreme Court was asked to determine which court had jurisdiction over retirement benefits earned in California—California or Nevada. Acknowledging that Nevada lacked in personam jurisdiction over the plaintiff, the defendant contended that his right to the retirement benefits was a species of intangible personal property,[9] and that Nevada, as the state of his domicile, could exercise jurisdiction in rem to adjudicate and award that property. In support of his contention, he cited section 946, Cal.Civ.Code. The California Supreme Court concluded that Nevada had no jurisdiction over the relevant benefits and observed that an "intangible, unlike real or tangible personal property, has no physical characteristics that would serve as a basis for assigning it to a particular locality. The location assigned to it depends on what action is to be taken with reference to it." *Id.* 99 Cal.Rptr. at 329, 492 P.2d at 17 [emphasis deleted]; *Atkinson v. Superior Court,* 49 Cal.2d 338, 316 P.2d 960, 963 (1957); *In re Waits' Estate,* 23 Cal.2d 676, 146 P.2d 5, 8 (1944). *See also Hanson v. Denckla* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ In American Standard's case, the purpose of assigning a situs to the wages is to establish the jurisdiction in which to garnish them. Within this context, jurisdiction should be determined "in light of the totality of contacts with the state involved" and the "bearing that local contacts have to the question of over-all fair

play and substantial justice." *Atkinson, supra,* 316 P.2d at 965. Accordingly, we enumerate the relevant "contacts" of each state in this action. The wages at issue arise from Thomas's employment at Gateway Chevrolet, a North Dakota corporation doing business in North Dakota. These wages are subject to North Dakota taxes and withholding. The laws of North Dakota, not Arizona or Texas, determine Thomas's right to the wages, and likewise fix the character of the wages as sole and separate property. It is his service in North Dakota that entitles Thomas to the wages. Neither Arizona nor Texas has closer contacts with the wages.

■ As unpaid wages are intangibles and the action taken with reference to them shows closer connections to North Dakota than any other state, the wages are classified according to North Dakota law. Because North Dakota is not a community property state, the wages are Thomas's sole and separate property. We accordingly hold that Thomas's wages are subject to the garnishment proceeding. Because there is no dispute as to fact, the trial court did not err in granting summary judgment in favor of American Standard in this regard. Rule 56, N.D.R.Civ.P.; *Capsco Prods., Inc. v. Savageau,* 493 N.W.2d 650 (N.D.1992).

*Thomas's Rental Income from Gateway*

■ When a foreign court attempts to affect title to real property located in North Dakota, we have said that:

"It is settled in this State that a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property situate in North Dakota.... A decree or judgment of a court of another jurisdiction having such a purported consequence will not be ac-

---

**9.** Wages which have been paid and received in the form of money are tangible assets. However, a garnishment action involves the execution "on earnings of a debtor while those earnings are held by a third party employer." NDCC § 32–09.1–02. Not yet having received the wages, the wage-earner only has a "right" to the wages. "Intangible property" is generally de-

fined as "claims, interest and rights," *Black's Law Dictionary* 1217 (6th ed. 1990), and "property [that] has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes...." *Id.* at 809. As a right, claim, or interest against the employer, wages yet to be received are intangible property.

corded full faith and credit under Article IV, Section I, of the Constitution of the United States."

*Rozan, supra,* at 700. In this case, however, the valid Arizona judgment did not directly convey or encumber North Dakota real estate. Although the Arizona judgment did not affect real property, the garnishment action which executes the Arizona judgment does affect real property by essentially encumbering the property by taking the rentals. In addition we believe the right to receive land lease payments would be classified as intangible personal property. *See* f.n. 9. We therefore apply North Dakota law to the garnishment of the lease income.

In 1988, the property which forms the basis of Gateway's lease was quit-claimed to Thomas and his wife "as joint tenants, and not as tenants in common." As joint tenants, both Thomas and his wife hold a joint interest in the property. A joint interest is one owned by several persons in equal shares by a title created by a single transfer. NDCC § 47–02–06. Contrary to Thomas's assertions, the land is not, nor ever can be, community property by the mere fact that the marital couple resided in a community property state.[10] North Dakota is not a community property state and we do not apply community property principles to land within our borders.[11]

■■■ We have held that each joint tenant has the right of enjoyment to the extent of his or her interest. *In re Estate of Paulson,* 219 N.W.2d 132 (N.D.1974). Al-

though a joint tenant may not convey or otherwise encumber another joint tenant's interest in property without the authorization or consent of the cotenant, one may deal with strangers as freely as owners of property held individually, and may convey or otherwise encumber one's own interest in the property without the consent of the other joint tenant. *Olson v. Fraase,* 421 N.W.2d 820 (N.D.1988). It follows that during the continuance of the joint tenancy, each joint tenant may have his or her fractional interest taken for the satisfaction of their individual debts. *Schlichenmayer v. Luithle,* 221 N.W.2d 77 (N.D.1974). As Thomas is free to pledge, encumber, lease, or sell his interest in the joint estate—or have it the subject of a judgment against him—it is his "sole and separate property."

In 1988, Thomas leased the entire property to Gateway. The lease was not signed by the other joint tenant, Thomas's wife. We have held that a joint tenant may not encumber another joint tenant's interest in the property without the authorization or consent of the cotenant. *Olson, supra.* Though a lease of joint property must be made by the act of all cotenants, if such a lease is made without the cotenant's consent or authority, the lease will in most instances be deemed valid and deemed for the benefit of both joint tenants. *Shelby v. Shelby,* 212 Ky. 552, 279 S.W. 942 (1926). Even if Thomas's wife did not consent or otherwise ratify the lease, she would be entitled to an equal share of the rents, profits, and income of the joint property. Thomas's interest in his share of the joint estate is his "sole and separate property."

---

**10.** Even if we were to apply Arizona or Texas community property law, the result would probably be the same. A common principle of community property law is that a husband and wife can hold property in derogation of their community property status if it clearly appears that the spouses agreed that the property should be taken in that manner. *McClennen v. McClennen,* 11 Ariz.App. 395, 464 P.2d 982 (Ct.App. 1970); *In re Marriage of Berger,* 140 Ariz. 156, 680 P.2d 1217 (Ct.App.1983) [joint tenancy allowed in community property state, despite having been purchased with community funds]; *Russo v. Russo,* 80 Ariz. 365, 298 P.2d 174 (1956) [when spouses own property as joint tenants in community property state, each owns his or her respective interest as separate property]. As the property was deeded to Thomas and his wife as joint tenants, a joint tenancy is presumed and

**11.** In *Rozan v. Rozan,* 129 N.W.2d 694 (N.D. 1964), we held that North Dakota real estate purchased with marital community funds by a husband who resided with his wife in a community property state did not alter the land's character to community property. As the land was purchased by the husband with community funds, the couple became tenants in common and a resulting trust for one-half interest in the land developed in favor of the wife. Here, however, the land in question remains a joint tenancy and not a tenancy in common with a resulting trust. *See also Matter of Estate of Erickson,* 368 N.W.2d 525 (N.D.1985).

While there is authority that one joint tenant may receive the whole rent of the joint property and is not accountable to his or her cotenant for receiving more than his or her share of the rents and profits, *Black v. Black,* 91 Cal.App.2d 328, 204 P.2d 950 (1949), we believe the better view is that a joint tenant is liable to account to his or her cotenant for receiving more than his or her portion of the rents and profits. *See Falkner v. Falkner,* 58 Mich.App. 558, 228 N.W.2d 461 (1975); *Lawrence v. Lawrence,* 231 Ark. 324, 329 S.W.2d 416 (1959). *Compare In re Estate of Paulson, supra,* [possession by one joint tenant is possession for the benefit of both]. This view is consistent with previous opinions of this court concerning the obligations existing between joint tenants. *See, e.g., Fettig v. Fettig,* 277 N.W.2d 278 (N.D.1979) [mortgagor who redeems in his own name presumptively redeems for all his cotenants and his holding of title will be in trust for benefit of all cotenants].

■ This right to accounting, however, is a personal one. In the past, we have held that tenants in common are entitled to an accounting against their cotenants. *Stevahn v. Meidinger,* 57 N.W.2d 1 (N.D. 1952); *Johnson v. Johnson,* 164 N.W. 327 (N.D.1917). We agree with the rationale that, absent a statute to the contrary, when one joint tenant collects rents on the property and does not proportionately share the rents with their joint tenants, the other joint tenants do not have a lien on the collecting joint tenant's share of the property. *Palpar, Inc. v. Thayer,* 115 Cal. App.2d 333, 252 P.2d 51 (1953); Anno. *Accountability of Cotenants for Rents and Profits or Use and Occupation,* 27 A.L.R. 184 (1923); Anno. *Accountability of Co-tenants for Rents and Profits or Use and Occupation,* 51 A.L.R.2d 388 § 30 (1957). Rather, the liability for rents and profits on a joint tenancy is a personal charge against the joint tenant who holds the rents, and one is not entitled to a lien on the land to secure the sums adjudged to be due. *Succession of Grubbs,* 182 So.2d 203 (La.Ct. App.1965); *Pistole v. Lanier,* 214 Ky. 290, 283 S.W. 88 (1926).

Thomas's wife made no appearance to defend her interest. She is entitled to a personal charge against Thomas for her share of the rental income, but it is not our province to apportion the income in order to limit American Standard's access to only Thomas's one-half interest in the income. We accordingly hold that all the rental income received by Thomas is subject to the garnishment proceeding. The trial court did not err in granting summary judgment in favor of American Standard in this regard. Rule 56 N.D.R.Civ.P.; *Capsco, supra.*

We affirm the trial court's judgment.

ERICKSTAD, C.J., MESCHKE, J., ALLAN SCHMALENBERGER, District Judge, and BERT L. WILSON, Surrogate Judge, concur.

ALLAN SCHMALENBERGER, District Judge, and BERT L. WILSON, Surrogate Judge, sitting in place of LEVINE and JOHNSON, JJ., disqualified.