**In the Matter of the Conservatorship of Lydia MILBRATH, an Incapacitated Person.**

**Aldon MILBRATH, Petitioner and Appellant,**

v.

**Glen MILBRATH, Respondent and Appellee.**

**Civ. No. 930041.**

Supreme Court of North Dakota.

Nov. 10, 1993.

Charles L. Chapman of Chapman & Chapman, Bismarck, for petitioner and appellant.

Jonathan C. Eaton of Eaton, Van de Streek & Ward, Minot, for respondent and appellee.

VANDE WALLE, Chief Justice.

Aldon Milbrath appealed from an order directing that certain funds be placed in a joint tenancy account in the names of Lydia Milbrath's conservator and Glen Milbrath, with the funds to be held in trust for Lydia Milbrath. We modify the order of the court and, as modified, affirm.

Glen and Aldon are the sons of William and Lydia Milbrath. Sometime prior to 1986, William purchased bank certificates of deposit, presumably with proceeds from the family farming operation. The certificates were placed in the names of William, Lydia, and Glen, in joint tenancy with rights of survivorship.

William died on October 1, 1986. Because Lydia was of advanced age and confined to a nursing home, Aldon petitioned for appointment of a conservator for her. In November 1987 C.R. Keller, a certified public accountant, was appointed conservator for Lydia.

Glen asserts that in early 1986 William delivered the certificates to him, directing that he use the funds to care for William and Lydia during their lifetimes, and then keep any remaining funds for himself. In December 1987 Glen transferred the funds from the joint tenancy certificates to a separate account in his own name, allegedly to retain control of the funds and carry out his father's wishes.

When Keller refused to make Glen return the funds to Lydia, Aldon petitioned the county court to either direct Keller to act or to appoint someone else to act on Lydia's behalf. The county court determined that William was the sole owner of the accounts before his death, and that he had made a valid gift to Glen subject to a trust to use the funds to care for William and Lydia during their lifetimes. However, the court also concluded that William had intended that the funds remain in joint tenancy accounts. The court therefore ordered that the funds be placed in a joint account in the names of Glen and the conservator, and that both joint tenants must consent to any withdrawals.

Aldon asserts that the court erred in finding a valid oral gift to Glen. Aldon contends that Chapter 30.1–31, N.D.C.C., governs ownership of the accounts, and that the funds remaining in the accounts at the time of William's death passed by right of survivorship.

At the time relevant to this action,[1] Section 30.1–31–01(1), N.D.C.C. [U.P.C. § 6–101(1)], provided that a certificate of deposit was an "account," and Section 30.1–31–01(4), N.D.C.C. [U.P.C. § 6–101(4)], defined "joint account":

"4. 'Joint account' means an account payable on request to one or more of two or

---

1. In 1991, the legislature repealed Chapter 30.1–31 and enacted a new Chapter 30.1–31 to correspond with Revised Article VI of the Uniform Probate Code, approved by the National Conference of Commissioners on Uniform State Laws in 1989. See 1991 N.D.Sess.Laws Ch. 351. The parties agree that the pre–1991 version of Chapter 30.1–31 governs this case. Unless otherwise stated, all references herein to sections within that chapter refer to the pre–1991 provisions.

more parties whether or not mention is made of any right of survivorship."

Section 30.1–31–04(1), N.D.C.C. [U.P.C. § 6–104(a) ], provided that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." The parties agree that these accounts were opened as joint accounts with rights of survivorship, and no evidence was presented of a contrary intent by William at the time he opened the accounts. Accordingly, unless there was a valid gift of the funds in the accounts during William's lifetime, the funds remaining on deposit should have passed to Lydia and Glen by right of survivorship under Section 30.1–31–04(1).

The trial court based its conclusion that William had validly transferred the accounts to Glen upon its finding that William was the beneficial owner of all sums in the accounts during his lifetime. The court apparently relied upon Section 30.1–31–03(1), N.D.C.C. [U.P.C. § 6–103(a) ]:

"1. A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

The court found that William had made all contributions to the joint accounts, with no contributions by Lydia or Glen.[2] Because there was no evidence that William intended to make a contemporaneous gift when he opened the accounts, the court found that William was the beneficial owner of the entire accounts during his lifetime.

■ Without discussion of the relevant provisions of Chapter 30.1–31 governing joint accounts, the court came to the conclusion that William, as beneficial owner, could orally transfer his interest in the accounts by physi-

cally delivering the certificates to Glen. Resolution of this issue, however, requires a further analysis of the probate code provisions.

Under Section 30.1–31–04(1), N.D.C.C., "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties." Section 30.1–31–05, N.D.C.C. [U.P.C. § 6–105], clarifies that the form of the account at the time of death determines survivorship rights, and provides the method for altering the form of the account:

"*Effect of written notice to financial institution.*—The provisions of section 30.1–31–04 as to rights of survivorship are determined by the form of the account at the death of a party. This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime."

Glen concedes that William never directed the bank in writing to alter the form of the accounts. Glen asserts, however, that the statutory provision for altering the form of the account is not the exclusive means of doing so, and he argues that William changed the form of the accounts during his lifetime by orally transferring them to Glen.

When considering statutes adopted from uniform acts, we are guided by Section 1–02–13, N.D.C.C.:

"*Uniform laws interpreted to effect purpose.* Any provision in this code which is a part of a uniform statute must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

---

2. Aldon does not challenge the court's finding that Lydia made no contributions to the accounts. We note that a different result occurs under the current statutes. Section 30.1–31–08(2), N.D.C.C. [U.P.C. § 6–211(b) ], now provides that, "[a]s between parties married to each other, in the absence of proof otherwise, the net

contribution of each is presumed to be an equal amount." Furthermore, Section 30.1–31–09(1), N.D.C.C. [U.P.C. § 6–212(a) ], now provides that if two or more parties to the account survive and one is the surviving spouse of the decedent, the interest of the decedent passes to the surviving spouse.

Court decisions interpreting other jurisdictions' adoption of uniform acts will be considered highly persuasive. See, e.g., *American Standard Life and Accident Insurance Co. v. Speros*, 494 N.W.2d 599 (N.D.1993); *Zuger v. North Dakota Insurance Guaranty Association*, 494 N.W.2d 135 (N.D.1992); *In re M.D.N.*, 493 N.W.2d 680 (N.D.1992).

■ The only two courts that have directly considered the issue have held that the requirement of written direction to the bank in Section 6–105 of the Uniform Probate Code is the exclusive method for altering the form of a joint account. See *Childs v. First National Bank of Pickens County*, 306 S.C. 20, 410 S.E.2d 17 (Ct.App.1991); *Estate of Wolfinger v. Wolfinger*, 793 P.2d 393 (Utah Ct. App.1990). *Wolfinger* is factually similar to this case. A father created a joint account in his own name and his daughter's name. After an argument with his daughter, the father orally instructed the financial institution to remove her name from the account. The financial institution failed to remove her name, and it remained on the ledger card at the time of her father's death. Construing a statute essentially identical to Section 30.1–31–05, N.D.C.C., the court held that the form of a joint account can only be changed by written instruction from a party, and the account passed to the daughter by right of survivorship. The results in *Wolfinger* and *Childs, supra*, support the conclusion that a party to a joint account cannot alter the form of the account by an oral gift.

Further support for that conclusion is found in Section 30.1–31–04(5), N.D.C.C. [U.P.C. § 6–104(e) ]:

"5. A right of survivorship arising from the express terms of the account or under this section, a beneficiary designation in a trust account, or a P.O.D. payee designation cannot be changed by will."

It is highly unlikely that the legislature would prohibit alteration of the survivorship provisions of a joint account in a written will, but at the same time allow alteration of such an account by an oral gift. This statute supports the conclusion that the requirement of written directions in Section 30.1–31–05 is mandatory and exclusive, and that an attempt to orally transfer one's interest in a joint account is ineffective.

Glen asserts that, notwithstanding the provisions of Chapter 30.1–31, this was a valid oral inter vivos gift under Section 47–11–07, N.D.C.C., which provides:

"*Gift—Writing or delivery required.*—An oral gift is not valid unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee."

This statute does not support Glen's assertion that an attempted oral gift of an interest in a joint account is valid. The statute merely sets out one element of a valid inter vivos gift. Section 47–11–07 is a general provision dealing with all oral gifts; Chapter 30.1–31 contains specific provisions governing joint accounts and disposition of funds remaining on deposit at death. Specific provisions control over general provisions. See Section 1–02–07, N.D.C.C.; *In re Estate of Laschkewitsch*, 507 N.W.2d 65 (N.D.1993); *In re Estate of Tuntland*, 364 N.W.2d 513 (N.D.1985). Therefore, any conflict in this case between Section 47–11–07 and Chapter 30.1–31 must be resolved in favor of the latter.

The result we reach is consistent with the legislative intent underlying Chapter 30.1–31, N.D.C.C. Article VI of the Uniform Probate Code, from which Chapter 30.1–31 was adopted, is entitled "Non–Probate Transfers." The clear purpose of the chapter is to provide simple non-probate alternatives for disposition of assets upon death of one party to a multiple-party account. The Editorial Board Comment to Section 30.1–31–03, N.D.C.C. [U.P.C. § 6–103], explains:

"The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy."

In creating this non-probate method for disposition of sums in joint accounts upon the beneficial owner's death, the drafters built in a degree of certainty by restricting alteration of the form of the account. The beneficial owner must be able to rely upon the presumption that sums left on deposit in the account will pass by survivorship under the statute. If we were to adopt the construction urged by Glen, anyone in possession of the certificate of deposit, savings passbook, or checkbook could defeat the deceased owner's intent by asserting an inter vivos oral gift. Such a result would greatly enhance the potential for fraud and abuse. The drafters have specifically included the requirement of a written order to change the form of the account to prevent this situation. In this way, the clearly expressed intent of the deceased beneficial owner is carried out, and the potential for fraud and abuse is virtually eliminated.

Nor do we agree with the assertion that this result unduly interferes with the owner's exercise of dominion over his own property. If the beneficial owner changes his mind and wishes to change the disposition that would occur under the survivorship statutes, he has two relatively simple options—he can give a written order to the bank in accordance with Section 30.1–31–05, N.D.C.C., or he can withdraw the funds from the account. Passage by survivorship under Section 30.1–31–04(1), N.D.C.C., applies only to sums remaining on deposit at the death of the beneficial owner. Under either option, the intent of the beneficial owner must be clearly expressed, and will not be dependent upon testimony of an interested party.

We conclude that William's attempted oral gift to Glen in trust was ineffective. Accordingly, the sums remaining in the joint accounts upon his death passed by survivorship to Lydia and Glen. By the terms of Section 30.1–31–04(1), N.D.C.C., Lydia and Glen each received an equal share of William's ownership interest. Each became a beneficial owner of half of the sums in the accounts, and as the final phrase of 30.1–31–04(1) specifies,

the right of survivorship continued between them.

The trial court correctly ordered that the funds be returned to a joint account; however, the court erred in holding that the attempted oral gift was valid and that the funds were subject to a trust. We therefore modify the order of the court and direct that the money be placed in a joint account in the names of Glen and Lydia.[3] Each will be the beneficial owner of one-half of the funds in the account, and no trust or other restrictions are to be imposed upon the account. As so modified, we affirm the order of the trial court. Costs on appeal are awarded to Aldon.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

**3.** The court did not explain why it ordered that the joint account be in the names of Keller and Glen. Certainly this would create confusion regarding survivorship rights. We therefore order that the joint account be in the names of Lydia and Glen. Keller will still have authority as conservator to act on Lydia's behalf regarding the joint account.